WILLIAM J. OLSON
(VA, D.C.)

ROBERT J. OLSON
(VA, D.C.)

JEREMIAH L. MORGAN
(D.C., CA ONLY)
———
HERBERT W. TITUS
(1937-2021)

# WILLIAM J. OLSON, P.C.
ATTORNEYS AT LAW
370 MAPLE AVENUE WEST, SUITE 4
VIENNA, VIRGINIA 22180-5615

TELEPHONE (703) 356-5070
FAX (703) 356-5085
E-MAIL: wjo@mindspring.com
http://www.lawandfreedom.com

114 CREEKSIDE LANE
WINCHESTER, VA 22602-2429
TELEPHONE (540) 450-8777
FAX (540) 450-8771

May 13, 2022
via email to jeffrey.cohen@atf.gov

Jeffrey Cohen, Esquire
Associate Chief Counsel
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

Re: ATF Cease & Desist Letter to JSD Supply Dated May 9, 2022

Dear Mr. Cohen:

As you know from our prior communication, our firm represents JSD Supply. This letter follows up on our conversation of yesterday afternoon, May 12, 2022.

To recap, on the morning of May 12, 2022, the ATF Philadelphia Field Division served our client, JSD Supply, with a cease-and-desist letter (enclosed) dated three days prior. This letter came as a great surprise, as JSD Supply does not sell any item that is regulated by ATF, its product inventory including only **unfinished** (non-firearm) frames and receivers (known as 80% frames and receivers) and firearm **parts** such as handgun slides, barrels, triggers, etc.

Yet, in spite of ATF's lack of any statutory authority to regulate sellers of such items, ATF's cease-and-desist letter demands that JSD Supply stop selling certain unidentified products (or combinations of products) in its inventory, on the theory that the sale of **unfinished** (and thus unregulated) firearm frames, together with **unregulated** firearm parts, supposedly constitutes a regulated firearm under federal law. On the contrary, zero plus zero does not equal one.[1]

Putting aside the serious inadequacies with ATF's curious legal theory (which may soon be tested), yesterday's cease-and-desist letter was entirely vague and unclear as to *which* specific

---

[1] As ATF's website explains, "[r]eceiver blanks that do not meet the definition of a 'firearm,'" such as those sold by JSD Supply, "are not subject to regulation under the Gun Control Act (GCA)." Moreover, ATF's website answers to the question "Does the GCA control the sale of firearms parts?" with the response "**No**, except that frames or receivers of firearms are 'firearms' as defined in the law and are subject to the same controls as complete firearms."

products our client was being ordered to stop selling.  Due to the vague nature of ATF's threats, JSD Supply has been forced to halt sales of *all* products from its website, so that no argument could be made that it has not complied with ATF's demands.

ATF's cease-and-desist letter further invited our client to contact ATF Special Agent in Charge Matthew Varisco with "any questions."  However, when we followed that advice, SAC Varisco did not respond himself, but rather my phone call was returned by you (as ATF Associate Chief Counsel) and Regina Drayton (ATF counsel from the Philadelphia field office).

As I stated at the outset of our conversation, the purpose of my call was to clarify exactly what is being demanded of our client JSD Supply by ATF's unclear cease-and-desist letter, and to identify ATF's specific objections to JSD Supply's sale of products, so that the company could resume operation in compliance with ATF's demands at the earliest possible date.

First, I noted that the ATF cease-and-desist letter identified as problematic "complete kits ... which include all the components necessary to produce a functional firearm."  However, as I explained, JSD Supply does not offer for sale any such "complete kits."[2]  I do not recall that you challenged my point.

---

[2]  As I recounted during our conversation yesterday, in December 2020, ATF took the position that two companies –Polymer80 and Brownells.com – were no longer permitted to sell "Buy Build Shoot" kits, comprised of an 80% incomplete receiver along with the remaining parts to manufacture and assemble a fully finished firearm.  Of course, this was a curious position for ATF to take, and in *direct contradiction* to ATF's longstanding position, as announced in numerous letters, where the agency has *repeatedly and expressly approved* the sale of exactly such a complete firearm "kit."  *See, e.g.,* ATF letter 3311/2006-946, dated August 16, 2006, explaining that "FTB ... previously examined ... your incomplete receiver" which "was classified as a non-firearm.  Selling this item as a 'kit' with blueprints, parts, etc., will not change this classification."

Nevertheless, after ATF expressed disapproval with the Polymer80 Buy Build Shoot kits, manufacturers, distributors and dealers industry-wide (including our client) went to great lengths to comply with ATF's changed position, separating complete "kits" into separate groupings of component parts.

ATF's recent cease-and-desist letter to our client demonstrates that ATF has *again* changed its position, and now objects to industry efforts at good faith compliance with ATF's revised December 2020 policy.  This raises the obvious question as to why ATF made the decision to target one corporation – our client – with a cease-and-desist letter for doing nothing more than following standard industry practice, and in compliance with ATF's most recently stated December 2020 position.

If ATF had wanted to change (again) its position, it certainly had the option of issuing an open letter to manufacturers and retailers of 80% receivers and firearm parts, giving notice of the change – instead of targeting a single company.  ATF has a great deal of experience with drafting such Open Letters.  *See* https://www.atf.gov/rules-and-regulations/firearms-open-letters.  I hope you would agree that forcing the shut-down of one business, under threat of criminal prosecution, is not the proper way in which to effect an industry-wide change in ATF policy.

Second, the ATF cease-and-desist letter objected to a situation where a company offers for sale "all the components necessary" for a customer to manufacture a privately made firearm, whether in a single transaction or "structured transactions at different times instead of a single sale...."[3]  With respect to this objection, I asked whether it would be permissible for a company to *remove a key component* (such as a handgun recoil spring) from its product line, so that there would be no way for a customer to purchase "all the components necessary" to manufacture a firearm.

In response you stated that, in fact, it *may not be permissible* to remove one (or perhaps even a few) "easily available components."  Of course, that is an entirely different position from what the ATF cease-and-desist letter states.  When I asked you to explain *which* firearm parts are considered to be "easily available," you stated that you could not provide further guidance about specific "permutations" of combinations of parts.

Of course, *virtually all* of the products offered by my client are sold by numerous (dozens, if not hundreds) of other vendors across the nation and over the Internet, and thus *all* could be considered "easily available."  Thus, falling far short of providing guidance to my client's legitimate questions about how to comply with ATF's demands, your response has made ATF's position even more unclear, and its threats to our client even more impossible to address.

Third, I then asked whether it would be permissible for JSD Supply to *stop selling unfinished 80% frames and receivers entirely*, and to *only* sell other firearm parts including slides, barrels, springs, triggers, etc.  In other words, I asked if ATF would be satisfied if our client offered to halt all sales of unfinished frames and receivers — the part which, once fully manufactured, constitutes the *only* regulated portion of a firearm.

While we had thought that the answer to this question would be a simple and direct "yes," you responded that you *did not have subject matter expertise* and **_could not provide a definitive answer_**.  Surely, one would think that *ATF's senior lawyers* should be able to answer with some certainty the simple question whether a retailer may sell unregulated firearm parts such as barrels, triggers, and springs – separate and apart from any 80% receiver. Otherwise, the agency's position would now be that it may regulate the sale "any part or parts" of a firearm, such as those that were regulated under the *repealed* Federal Firearms Act of 1938.  Such an extreme position would threaten not only my client, but also many thousands of companies across the country that sell firearm parts, 80% receivers, or some combination thereof.

Interestingly enough, both you and Ms. Drayton specifically instructed me to examine ATF Final Rule 2021R-05F, regarding the definition of "frame or receiver," for more

---

[3] The term "structured transaction" has no antecedent in administering the GCA or the NFA, but rather is a term used in the financial and banking industry with regard to "structuring" cash deposits.  To our knowledge, this term first appeared at a Firearms Industry Conference when ATF attorney James P. Vann was discussing using "structuring" charges against parts dealers.  Further, in the context of banking, if this were indeed a "structuring" issue, the *customer* is the one who is responsible for the "structuring," and not the bank (or parts seller such as JSD Supply).

information about ATF's position in this matter. Yet confusingly, the ATF cease-and-desist letter to my client *states exactly the opposite* — advising that ATF's recent position was taken "notwithstanding the recently announced regulations and definitions under Final Rule 2021R-05F," which by its very terms does not take effect until August 24, 2022.

In other words, your reliance on the Final Rule to explain ATF's rationale behind the JSD Supply cease-and-desist letter makes it appear that ATF has decided to enforce the provisions of the Final Rule against JSD Supply, *more than three months before it is scheduled to take effect*.

ATF routinely states, as one of its primary mission functions, to "help[] industry members and the public determine what laws and regulations may be applicable to [a] product, and any steps that they may need to take to be compliant with those laws and regulations." *See* NPRM in Rule 2021R-05F, 86 *Fed. Reg.* 27733. *See also* at 30829 (ATF seeks to "aid … persons and industry members … in complying with Federal laws and regulations" so that they may "comply with the law, and thereby reduce their risk of incurring criminal or civil penalties, or the need for corrective actions.").

Yet in this case, ATF's written offer to provide answers to "any questions" from our client has proven to be a hollow promise. Rather than providing clarity with respect to my client's good faith questions about how to comply with ATF's demands, you have provided us no options to work with the agency in order to come into compliance with ATF's newly-minted legal position.

During our conversation, you repeatedly stressed that you were not a "subject matter expert" and could not "bind the ATF" as to its position. Naturally, since my client has sought guidance as to ATF's *legal* position, and the ATF cease-and-desist letter invited my client to ask "any questions," we believed that ATF's *senior lawyers* would be able to provide guidance on those basic questions. Since we were mistaken in that belief, perhaps this letter will provide your office with the opportunity to find someone within the ATF who *does* have subject matter expertise in the area of firearms, who *can* provide clarity in response to our client's reasonable, good-faith questions about how to comply with ATF's demands.

Either way, ATF has no authority to arbitrarily put a company out of business through the issuance of a vague, ambiguous, and unclear cease-and-desist letter, and then decline to provide any clarity about what exactly the agency is demanding. In other words, federal law does not authorize ATF unilaterally to threaten the equivalent of "capital punishment" on a business operating in a heretofore unregulated section of the firearm industry.

Thus, on behalf of my client, I hereby request that ATF reply to this letter, in writing, within five (5) calendar days, this time providing clear guidance as to how my client may comply with ATF's demands, including:

1) Whether stopping sales of various key firearm part(s), such as a handgun recoil spring, will result in a situation where JSD Supply complies with ATF's position because it does not offer for sale "all the components" to manufacture a firearm.

2) If the answer question #1 is "no," then whether stopping sales of all 80% frames and receivers, and continuing only to sell other unregulated firearm parts including slides, barrels, triggers, springs, etc., constitutes compliance with ATF's letter.

Additionally, *we hereby request a meeting*, at your earliest opportunity, with ATF personnel with both subject matter expertise *and* authority to provide *definitive* guidance as to what is being demanded of our client by ATF's cease-and-desist letter.

If ATF cannot provide timely, definitive answers to these questions, our client will have no recourse but to pursue all available legal remedies. Please do not hesitate to contact me at (703) 356-5070, if I can be of assistance.

Sincerely yours,

*Robert J. Olson*

Robert J. Olson

Enclosure (ATF cease-and-desist letter)

cc:   Marvin G. Richardson
      Deputy Director, ATF
      marvin.g.richardson@usdoj.gov

      Thomas L. Chittum, III
      Associate Deputy Director, ATF
      thomas.chittum@atf.gov

      Pamela Hicks, Esquire
      Chief Counsel, ATF
      pamela.hicks@atf.gov

      James P. Vann, Esquire
      Associate Chief Counsel, ATF
      james.p.vann@atf.gov

      SAC Matthew P. Varisco
      Regina Drayton, Esquire
      Philadelphia Field Division, ATF
      PhilDiv@atf.gov



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Philadelphia Field Division*

601 Walnut Street, Suite 1000E
Philadelphia, PA  19106

www.atf.gov

May 9, 2022

**JSD Supply**
1052 New Castle Road,
Prospect, Pennsylvania 16052

Dear Mr. Vinroe:

This letter is in regard to the products sold by your company, JSD Supply, which are generally described on your website, www.jsdsupply.com, as "JSD 80% Lower Receivers, Jigs, and Gun Parts Kits." The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is aware that JSD Supply is selling and transferring all the components necessary to produce a fully functional firearm to a single customer in one or multiple transactions.

The Gun Control Act of 1968 ("GCA"), in relevant part, defines the term "firearm" as "any weapon…which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive…[or]…the frame or receiver of any such weapon." *18 U.S.C. § 921(a)(3)*. ATF has held that kits which include all components necessary to produce a functional firearm, including the jig or template used to finish the unfinished frame or receiver, the slide assembly, and the necessary components to complete the frame or receiver are themselves properly classified as "firearms" under the GCA. Specifically, these kits are a weapon that may readily be converted to expel a projectile by the action of an explosive. These kits are, therefore, firearms under the GCA and have always been firearms pursuant to statute. This is and has been true notwithstanding the recently announced regulations and definitions under Final Rule 2021R-05F.

Accordingly, those engaged in the business of selling these complete kits, as your company does, are in fact engaged in the business of dealing firearms. Further, selling the necessary components to produce a functional firearm to the same person through multiple purchases or structured transactions at different times instead of a single sale is equivalent to selling the complete kit to the customer. That is, the complete set of component parts necessary to create a firearm need not be packaged or sold in a single container or a single transaction in order to be considered a firearm. These piecemeal sales circumvent the requirements of the GCA and are unlawful.

-2-

JSD Supply

To lawfully engage in the business of dealing firearms, a person must first obtain a Federal Firearms License (FFL). *18 U.S.C. § 923(a)*. JSD Supply does not currently possess, nor was it ever issued, an FFL that would authorize JSD Supply to engage in the business of dealing firearms. Additionally, JSD Supply does not maintain records as required by the GCA, nor does it subject its customers to undergo an NICS background check, both of which actions are necessary for the lawful sale of firearms. Therefore, JSD Supply must take the following actions:

1. Cease and desist the sale of firearms without a license;

2. Cease and desist the sale of the full set of component parts necessary to produce or readily converted into a functioning firearm, whether in a single transaction or in multiple structured transactions;

3. Immediately and fully comply with and abide by all laws and regulations governing the sale of firearms, frames, and receivers.

For public safety reasons, your cooperation in this matter is essential.

For any questions, please contact Special Agent in Charge, Philadelphia Field Division, Matthew P. Varisco at 215- 446-7800.

Sincerely,

MATTHEW VARISCO
Digitally signed by MATTHEW VARISCO
Date: 2022.05.10 20:00:19 -04'00'

Matthew P. Varisco
Special Agent in Charge