IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOT AN LLC d/b/a/ JSD SUPPLY,<br><br>    Plaintiff,<br><br>    v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; and GARY M. RESTAINO AS THE ACTING DIRECTOR OF ATF,<br><br>    Defendants. | Case No. 2:22-cv-00747-WSS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 65(a), Plaintiff Not an LLC d/b/a JSD Supply ("Plaintiff" or "JSD Supply") submits the following Memorandum in support of its Motion for a Temporary Restraining Order and/or Preliminary Injunction. **Plaintiff seeks this relief on an emergency basis**, in order to restrain the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), its Acting Director, and the U.S. Department of Justice ("DOJ") (together, "Defendants") from enforcing an ATF Cease-and-Desist Order ("C&D Order") dated May 9, 2022, which was hand-delivered to Plaintiff JSD Supply on the morning of May 12, 2022. *See* Exhibit "1" attached to the Verified Complaint. As explained in detail in Plaintiff's Verified Complaint, ATF's C&D Order is without statutory authority and cannot be enforced.

Despite being a business selling products that are entirely unregulated by federal law (Verified Complaint at ¶¶76-77), and completely outside the authority of the ATF to control (Verified Complaint at ¶¶81-84), ATF nevertheless issued a C&D Order to Plaintiff, ordering

Plaintiff to halt sales of certain *unspecified* products and *vague* combinations of products (Verified Complaint at ¶¶32-48). Due to the unclear nature of ATF's demands, Plaintiff was forced to halt retail sales of <u>all</u> its products (Verified Complaint at ¶¶60, 205), leading Plaintiff to incur immediate, significant, and ongoing irreparable harm, including tens of thousands of dollars lost in sales that cannot be recouped because of governmental immunity, lost goodwill with its customers, the inability to continue to employ more than a dozen individuals who rely on the ability of Plaintiff to continue its lawful business operations (Verified Complaint at ¶¶206-210), the potential loss of its business if the C&D Order remains in effect, and most importantly depriving Plaintiff and its customers of the exercise of the constitutionally recognized rights to acquire arms and other Constitutional rights as discussed below.

For the reasons stated below, Plaintiff respectfully requests that this Court immediately enjoin enforcement of ATF's C&D Order to Plaintiff, together with Defendants' premature attempt to begin enforcement of new regulations announced in the ATF Final Rule entitled "Definition of 'Frame or Receiver' and Identification of Firearms," 2021R-05F, 87 *Fed. Reg.* 24652, published in final form in the *Federal Register* on April 26, 2022, but not due to be implemented (and therefore not effective) until August 24, 2022 – more than three months from now (Verified Complaint at ¶¶181-184, 223). **Plaintiff seeks a hearing on its motion as soon as possible.**

## ARGUMENT

### Standard for Preliminary Injunction

In order to obtain preliminary injunctive relief, Plaintiff must establish "[i] that he is likely to succeed on the merits, [ii] that he is likely to suffer irreparable harm in the absence of preliminary relief, [iii] that the balance of equities tips in his favor, and [iv] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 55 U.S. 7, 19 (2008). This four-part test is the same "regardless of whether a petitioner requests a temporary restraining order …

or preliminary injunction. *See Ellakkany v. Common Pleas Court of Montgomery Cnty.*, 658 Fed. Appx. 25, 27 (3d Cir. July 27, 2016) (applying one standard to a motion for both a TRO and preliminary injunction)." *See also Thakker v. Doll*, 451 F. Supp. 3d 358, 364 (M.D. Pa. 2020). Plaintiff meets each of these factors, for the reasons below.

I. **Plaintiff Is Likely to Succeed on the Merits.**

a. **Defendants' Attempt to Control the Sale of Unregulated Firearm Parts Is at Odds Not Only with All Prior ATF Guidance on the Topic, But Also with the Statutory Text.**

Agency implementation of a statute is *ultra vires* if it contradicts the statute's plain language. *See Shalom Pentecostal Church v. Acting Sec'y, United States Dep't of Homeland Sec.*, 783 F.3d 156 (3d Cir. 2015). Defendants' interpretation of 18 U.S.C. § 921(a)(3) is at odds with plain text of the statute, and violates the expressly stated intent of the Gun Control Act ("GCA"). Moreover, as is the case here, an agency's action is arbitrary and capricious if it conflicts with prior official agency guidance on the same issue, especially without purporting to overrule that prior guidance, acknowledge that the agency is making a policy shift, or providing a reasoned explanation for the change. *See FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009) ("the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position. An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books."). *See also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015) ("the APA requires an agency to provide more substantial justification when 'its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account. It would be arbitrary or capricious to ignore such matters.'").

Plaintiff is a retail seller of firearm parts, along with so-called "80% receivers" (and the tools needed to finish the manufacturing process into a finished frame or receiver covered by the

GCA). Verified Complaint at ¶¶5, 19. Known colloquially as "80% receivers" by the firearms community, and by ATF as receiver "blanks" or "castings," such items represent unfinished firearm frames and receiver precursors, which ATF has specifically determined have not reached a sufficient stage of completion to be classified as "firearms" under the GCA, and which are therefore entirely unregulated by federal law. Verified Complaint at ¶¶16-17, 87-88. Contrary to ATF's allegations in its C&D Order, Plaintiff does not manufacture or sell "firearms." On the contrary, none of the products Plaintiff offers for sale is regulated in any way by the Gun Control Act, and thus all are completely outside of ATF's authority to control. This is confirmed by *numerous* ATF guidance documents, publications, and classification letters on the subject.

First, the GCA does not regulate firearm parts, such as barrels, springs, triggers, sights, slides, handguards, etc. ATF has admitted this fact numerous times. Verified Complaint at ¶¶17, 87-88. To be sure, the Federal Firearms Act of 1938 regulated "any part or parts" of a firearm *as* a "firearm," but Congress deliberately did away with that "impractical" restriction through enactment of the Gun Control Act of 1968 ("GCA"). Verified Complaint at ¶¶84, 234. Now, in pertinent part, the Gun Control Act regulates as "firearms" only "(A) *any weapon* (including a starter gun)[1] which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) *the frame or receiver of any such weapon*…." 18 U.S.C. Section 921(a)(3) (emphasis added).

---

[1] Adopted as part of the 1968 GCA, this language was "[a]dded to the term 'firearm' [to regulate] *weapons* which 'may readily be converted to' a firearm. The purpose of this addition is to include specifically any starter gun designed for use with blank ammunition which will or which may be readily converted to expel a projectile…." (*See* Verified Complaint Exhibit "20." Thus, in order for a device to be capable "readily be[ing] converted" into a firearm, it must first be a "weapon." An 80% receiver, even together with firearm parts, is not a "weapon" of any sort until it is *manufactured* into a firearm.

Second, the GCA does not regulate 80% frames and receivers. Numerous ATF publications and determination letters hold as much. In fact, as catalogued in Plaintiff's Verified Complaint, ATF has repeatedly and expressly approved the unregulated sale of *every one* of the specific types of 80% frames and receivers that Plaintiff offers for sale, finding specifically that each one is not a "frame or receiver" and thus not a "firearm" under federal law. Verified Complaint at ¶¶90-107.

Third, the GCA does not regulate combinations of these unregulated parts. Contrary to ATF's newly-minted policy as described in its rulemaking effective August 24, 2022, and now prematurely implemented in its C&D Order to Plaintiff, one plus one does not equal zero. In fact, ATF has repeatedly concluded as much finding, with respect to an "incomplete receiver [which] was previously … classified as a non-firearm," that "[s]elling this item as a 'kit' with blueprints, parts, *etc*., will not change this classification." Verified Complaint at ¶104. Similarly, ATF has explained that ""[p]arts kits" that do not contain a finished "firearm receiver, are not regulated by any statute other than for importation." Verified Complaint at ¶106. In other words, ATF has expressly approved of *precisely* the activities in which it now accuses Plaintiff of engaging, subject to the C&D Order.[2]

In sum, ATF has repeatedly recognized that it has no authority to regulate the sale of any of the items in Plaintiff's inventory, including "kits" and combination of those items. In other words, ATF's existing policy guidance in this area not only directly conflicts with, but also

---

[2] In fact, Plaintiff does not even sell complete "kits" which contain "all the components necessary to produce a fully functional firearm…." Verified Complaint at ¶52. Rather, Plaintiff's inventory consists of individual parts and groups of parts, but not any single "kit" from which a complete firearm can be manufactured. Verified Complaint at ¶76. Plaintiff's customers are free to pick and chooses which parts they wish to purchase including, if the customer wishes, all the parts from which a homemade firearm could be manufactured. Verified Complaint at ¶140.

completely undermines, the approach the agency has taken in its C&D Order to Plaintiff. The C&D Order does not acknowledge ATF's existing contrary guidance, does not announce any policy change, and does not explain why such changes are necessary. Rather, the C&D Order falsely pretends to represent a position that ATF has *always* had. *See* Exhibit "1" at 1.

Not only does all prior ATF guidance directly conflict with and undermine the agency's C&D Order challenged here, but also the agency's newly-minted policy stands in direct opposition to the statutory text of the GCA.

First, as Plaintiff's Verified Complaint recounts, ATF earlier had advanced, but then appears to have abandoned, the legal theory that "kits" of unregulated firearm parts are "handguns" under 18 U.S.C. Section 921(a)(29) and <u>*thus*</u> that they are "firearms" under Section 921(a)(3). Verified Complaint at ¶¶157-158. On the contrary, both subsections of Section 921(a)(29) refer to "a firearm," clearly indicating that an object must first be a "firearm" under Section 921(a)(3) before it can be a "handgun" under Section 921(a)(29). If being a "handgun" were another way to be a "firearm," then that language would have been included as a separate subsection of Section 921(a)(3) and would render Section 921(a)(29) superfluous. The additional fact that the agency has never before – and seemingly has never since – advanced this meritless argument further confirms that it does not hold water.

Second, ATF's recently promulgated Final Rule 2021R-05F creates a regulatory change and policy shift, revoking prior ATF classification letters on 80% frames and receivers, and creating a new definition of a "weapon parts kit" that, if ATF has its way, will now be regulated as a "firearm" under federal law even though the GCA text does not support it. Verified Complaint at ¶¶163, 169-180. That Final Rule quite obviously represents the basis for ATF's enforcement action against Plaintiff here, using parallel arguments *and even identical language* to ATF's C&D

Order to Plaintiff. Verified Complaint at ¶¶160-168. Yet the Final Rule is not scheduled to take effect for more than three months – on August 24, 2022. *See* 87 FR 24652. ATF is entirely without authority to enforce the Final Rule against Plaintiff now, when it is based on tectonic, underlying regulatory changes to the GCA that have not yet formally occurred *as a matter of law* and which changes themselves are not supported by the text of the GCA. Indeed, the Final Rule represents an omnibus rulemaking containing radical changes to the ATF's interpretation of the GCA that are not supported by the plain language, which shortly will be challenged by numerous Second Amendment groups, and which will require considerable judicial time to litigate. ATF's implementation of its new policy selectively to Plaintiff now could be an effort to establish some factual predicate for the contention that the new rule has always been the rule, designed to bolster ATF's litigating position in response to upcoming challenges to the Rule – a tactic which should not be allowed.

Third, as the Final Rule claims, a "weapon parts kit" is a "firearm" under Section 921(a)(3)(A), because it allegedly is "designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." Verified Complaint at ¶164. Even if ATF's new policy, as advanced in the Final Rule and not yet effective, somehow could legitimize its *ex ante* enforcement action against Plaintiff, ATF's position in the Final Rule is entirely without merit, for at least three reasons.

First, although the term "readily" is used in Section 921(a)(3)(A), it clearly applies only to complete "weapons," a very different issue than 80% receivers and parts kits. That section has no application here, to determine when an unfinished item becomes a "frame or receiver" under Section 921(a)(3)(B). For a device to be capable of "readily be[ing] converted" into a firearm, it must first be a "weapon." Yet an unfinished 80% receiver – something that ATF acknowledges is

merely a precursor to being a finished firearm frame or receiver – is not a "weapon." Nor has an 80% receiver (even if sold as part of a kit with other parts) ever been determined to be a "weapon" of any sort. An 80% receiver certainly is not an operational "weapon" that "will" fire ammunition. Moreover, since it is not even fully manufactured, and certainly not assembled or operable, an 80% receiver cannot fire even blank ammunition. An 80% receiver (or even a complete parts "kit") cannot be used as a "weapon" in any sense of the word (other than maybe throwing it at someone). On the other hand, even a blank firing or starter gun can be used as a "weapon" through threats and intimidation.

Second, there is a more fundamental reason that an 80% receiver as part of a so-called "weapon parts kit" is not a "firearm" under Section 921(a)(3)(A). Under Section 921(a)(3)(A), in order to "complete[], restore[], assemble[], or otherwise convert[]" an 80% frame or receiver (plus a collection of parts) into a functioning "weapon," **two steps** must occur. First, the 80% frame or receiver must be fully manufactured into a functional frame or receiver. Second, the functional "weapon" must be assembled using that frame or receiver. Yet under Section 921(a)(3)(B), there is **only one step** that must be taken to turn an item into a firearm "frame or receiver" – manufacture of the 80% frame or receiver into a functioning frame or receiver. In other words, an 80% frame or receiver becomes a Section 921(a)(3)(B) "frame or receiver" long before it ever becomes a Section 921(a)(3)(A) "weapon." Thus, the addition of parts, jigs, tools, etc. to an 80% frame or receiver has no bearing on when the kit becomes a "firearm," as the parts, once finished via a manufacturing process, will become a "frame or receiver" covered by the GCA (and thus a firearm) long before it becomes a functional "weapon" (and thus a firearm).

Third, what ATF terms "weapon parts kit" contains only an unfinished and unregulated 80% product, which ATF has determined is *not* a "frame or receiver" under federal law. Yet in

order to be a "weapon" described in Section 921(a)(3)(A), an object must contain an actual, finished frame or receiver. Indeed, Section 921(a)(3)(B) describes as a firearm "the frame or receiver of any such weapon," clearly indicating that "any such weapon" under Section (A) must contain a "frame or receiver." Since ATF acknowledges that an 80% frame or receiver is *not* a frame or receiver under the statute, a kit that incorporates an 80% frame or receiver cannot possibly be a "weapon" under section (A).

In short, there is no way for ATF to hammer the square peg of 80% "kits" into the round hole of Section 921(a)(3). *St. Vincent Randolph Hosp., Inc. v. Price*, 869 F.3d 510, 513 (7th Cir. 2017) ("When the agency just asserts an *ipse dixit*, then the decision falls for the lack of a reason."); *see also Morrison v. Olson*, 487 U.S. 654, 726 (1988) (Scalia, J., dissenting) ("It is in fact comforting to witness the reality that he who lives by the *ipse dixit* dies by the *ipse dixit*.).

Finally, if ATF is permitted to accuse a retailer of unregulated firearm parts, such as Plaintiff, of illegally transferring firearms, absurd results will follow. Indeed, only months ago, ATF reached the clearly-wrong and absurd conclusion that *a metal water bottle* might not be a water bottle at all, but instead *might be a "firearm"* under the GCA, or even a "machinegun" under the National Firearms Act. Of course, *if all it takes for an item to be classified as a "firearm" is the remote possibility that someone theoretically could use that item as a component to manufacture a homemade firearm*, then the possibilities are endless.

As Plaintiff's Verified Complaint explains, all sorts of raw materials and even innocuous household objects can be manufactured into firearms. Tens of thousands of retailers across the country, both online and brick-and-mortar, offer such items for sale. Just as with the products Plaintiff sells, the items available at these retailers (pipes, fittings, rods, sheet metal, tubing, metal plate, nuts and bolts, etc.) are not firearms under federal law, and thus are entirely unregulated by

the Gun Control Act or National Firearms Act and, by extension, ATF. And just as with the products Plaintiff sells, the items available at these retailers do not magically become a "firearm" on the theory that a person can walk through a store, put unregulated items into his cart, and head to the checkout aisle with a "complete set of component parts necessary to create a firearm," which ATF says "need not be packaged or sold in a single container or a single transaction in order to be considered a firearm." For the same reasons that Home Depot is not an unlicensed gun dealer, Plaintiff is not an unlicensed gun dealer.[3]

### b. The Challenged C&D Order Violates Plaintiff's Second and Fifth Amendment Rights.

In addition to Plaintiff's strong likelihood of success on the merits of its statutory claims, Defendants have also violated Plaintiff's constitutional rights. Through issuance of its C&D Order, ATF has effectively forced the closing of Plaintiff's retail business, announcing the agency's intention to enforce an illegal resurrection of the long-ago defunct Federal Firearms Act's regulation of all firearm parts. Yet by passing the GCA, Congress unambiguously expressed its intent that firearm parts be entirely *unregulated* by federal law. Nevertheless, ATF has steadfastly declined to clarify its vague C&D Order to Plaintiff, refusing even to confirm that Plaintiff may continue business operations and sell only firearm parts (and not 80% frames or receivers).

By arbitrarily creating new rules that are neither found in nor supported by any federal statute, and applying them capriciously against Plaintiff, Defendants have infringed the right to keep and bear arms. It is beyond debate that lawful firearm ownership necessarily includes the ability to acquire arms. Indeed, other courts have recognized the connection between the right to

---

[3] As explained in Plaintiff's Verified Complaint (*See* ¶21), individual parts are simply not regulated by the GCA or the NFA and are thus freely available to purchase either from Plaintiff – or from Home Depot.

keep and bear arms, and the ability to commercially purchase and sell arms. *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use[.]"); *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms."); *Andrews v. State, 50 Tenn*. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair."); *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (Second amendment preserves "a corresponding right to obtain' the 'necessary' arms and ammunition[.]"); *Elhert v. Settle*, CL20000582, 2020 Va. Cir. LEXIS 119, *7 (July 14, 2020) ("The lack of a right to buy *and sell* arms would negate the right to keep arms as well as defeat the purpose of the right stated in the prefatory clause....").

Even ATF's Final Rule on frame or receivers confirms that it is **legal** for individuals to make their own firearms from unregulated parts, without governmental permission or oversight. *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 *Fed. Reg.* 24652. In the Final Rule, the ATF stated that:

> [T]he GCA and this rule do not prohibit individuals from assembling or otherwise making their own firearms from parts for personal use, such as self-defense or other lawful purposes. Neither the GCA nor this rule prohibits law-abiding citizens from completing, assembling, or transferring firearms without a license…. [*Id.* at 24676.]

ATF's C&D Order, however, tells a different story, equating firearms parts with *actual* firearms, in direct conflict with the text of the GCA and in open defiance of the unambiguously expressed will of Congress.

The Fifth Amendment's protections are coextensive with the Fourteenth Amendment's protection "against arbitrary state legislation, affecting life, liberty and property" and apply to laws

passed by Congress. *Hibben v. Smith*, 191 U.S. 310, 325 (1903). It is not subject to serious debate that Congress has chosen specifically against regulation of companies which merely deal in firearms parts, instead choosing to regulate commerce in and dealers of *actual* "firearms." As such, Plaintiff has a property right to pursue its business interests free from "intentional and unjustifiable interference." *See Small v. United States*, 333 F.2d 702, 704 (3d Cir. 1964) ("The right to pursue a lawful business or occupation is a right of property which the law protects against intentional and unjustifiable interference."); *see also St. Germain v. Bakery & Confectionery Workers' Union*, 97 Wash. 282, 290, 166 P. 665, 667 (1917) ("The right to carry on a lawful business without obstruction is a property right, and its protection is a proper object for the granting of an injunction."). The C&D Order unlawfully deprives Plaintiff of this property right.

Finally, ATF's C&D Order violates the constitutional protection against vague laws. As the Supreme Court has held, "the prohibition of vagueness in criminal statutes…is 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018). In this case, the Agency interpretation is even more egregious. ATF's legal theory requires it to find ambiguity in an unambiguous statute, by regulating items deliberately left unregulated by the GCA and NFA, and then ordering a company that sells those unregulated items to stop selling unspecified combinations of items, under threat of criminal prosecution. And as Plaintiff has explained, in spite of offering to answer "any questions" Plaintiff had with respect with compliance, ATF has refused to provide any specifics at all as to how Plaintiff can achieve compliance with the agency's vague demands. Verified Complaint at ¶¶59-75.

**II.     Plaintiff Is Suffering and Will Continue to Suffer Significant Irreparable Harm in the Absence of Preliminary Relief.**

As a direct result of the ATF's C&D Order, Plaintiff is suffering and will continue to suffer significant and irreparable harm, which cannot be remedied in the absence of injunctive relief. Verified Complaint at ¶¶206-210. The irreparable harm inquiry requires the Court to assume that Plaintiff has demonstrated a likelihood of success on the merits, asking "whether that violation, if true, inflicts irremediable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006). In order to prevail in this inquiry, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

As a preliminary matter, Plaintiff is unaware of any legal theory on which it could obtain compensatory damages from Defendants in this matter for its economic losses, and thus has no remedy at law available to remediate the severe financial harm directly resulting from the unlawful ATF C&D Order challenged here. Indeed, because Defendants are federal government agencies, compensatory damages are not available under the limited waiver of sovereign immunity found in the Administrative Procedure Act, *see* 5 U.S.C. § 702. *See also Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("the APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions 'seeking relief other than money damages.'"); *District of Columbia v. United States Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (Dist. D.C. 2020) ("<u>economic injury caused by federal agency action is unrecoverable</u> because the APA's waiver of sovereign immunity does not extend to damages claims….") (emphasis added).

Moreover, the Federal Tort Claims Act "does not … provide a relevant waiver of sovereign immunity because claims based on interference with contracts rights are expressly excepted from the FTCA, *see* 28 U.S.C. § 2680(h), and the Supreme Court has held that Constitutional torts are not 'cognizable' under the FTCA." *Brendsel v. Office of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52, 66 (D.D.C. 2004).

Next, even if money damages were available to Plaintiff, the effect of ATF's C&D Order has been the complete shutdown of Plaintiff's retail sales. Verified Complaint at ¶205. If Plaintiff is forced to wait until an award of damages after a trial, Plaintiff will no longer exist as a thriving business with more than a dozen employees, if it exists at all. Verified Complaint at ¶¶208-209. Indeed, "even where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction...." *Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691 (4th Cir. 1994); *see also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990) ("the unsatisfiability of a money judgment can constitute irreparable injury.").

> III. **Finally, Plaintiff's Complaint alleges far more serious injuries than monetary damages. Plaintiff has also alleged violations by Defendants' of both the Second and Fifth Amendments, and violations of constitutional rights have been repeatedly held to satisfy the requirement of "irreparable injury." As the D.C. Circuit has explained, "[s]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (brackets omitted) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)). Thus, "although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes." *Id*. (brackets omitted) (quoting *Davis*, 158 F.3d at 1346).**

The principle that the violation of a constitutional right, without more, can amount to irreparable harm derives from the statement of a plurality of the Supreme Court in *Elrod v. Burns*

that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). As the Seventh Circuit has explained:

> The loss of a First Amendment right is frequently presumed to cause irreparable harm based on the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future. [*Ezell v. City of Chicago,* 651 F.3d 684, 699 (7th Cir. 2011) (internal quotation marks omitted).]

Likewise, the Second Amendment also protects "intangible and unquantifiable interests." *Id.* Indeed, its "central component is the right to possess firearms for protection," and violations of that right plainly "cannot be compensated by damages." *Id.* Thus, for violations of Second Amendment rights, as for violations of First Amendment rights, "irreparable harm is presumed." *Id.*

### IV.  The Balance of Equities Favors Plaintiff.

The equities weigh strongly in Plaintiff's favor. In addition to serious economic damages, Plaintiff continues to suffer an ongoing violation of constitutional rights, constituting serious and irreparable injuries that cannot be remedied without injunctive relief.

It is evident that Plaintiff cannot at this time reasonably continue to engage in business activities, while ATF's vague and unsubstantiated threats of fines and imprisonment hang over its head, with respect to what is unquestionably lawful behavior and commerce. The vague demands made in ATF's C&D Order have chilled the continued operation of Plaintiff's lawful retail business activities, and the agency has been unwilling to provide any clarification as to how Plaintiff can continue limited operations while complying with ATF's vague demands. For instance, the ATF has used the threat of alleging "structured transactions," a concept which has no

reasonable application to the GCA, in order to intimidate Plaintiff into halting lawful sales of unregulated firearm parts.[4]

---

[4] Indeed, ATF's C&D Order absurdly attempts to incorporate currency transaction reporting penalties into the GCA, by alleging that "selling the necessary components to produce a functional firearm to the same person through multiple purchases or structured transactions at different times instead of a single sale is equivalent to selling the complete kit to the customer." Exhibit "1" at 1. To be sure, some structured transactions are prohibited in banking law, *see* 31 U.S.C. § 5324, but structuring has no such reference in or application to the GCA. Discussing the now-superseded question of criminal intent in the financial structuring context, the U.S. Supreme Court acknowledged that, with examples harkening back to even the late 1800s: "The Stamp Act of 1862 imposed a duty of two cents upon a bank-check ... A careful individual … resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax." *Ratzlaf*, 510 U.S. at 144–46 (quoting *United States v. Isham*, 84 U.S. 496, 506 (1873)). The *Ratzlaf* corollary is clear: For a structuring activity to be unlawful — or any activity that ATF might be unreasonably construe to be "structuring" — <u>Congress must expressly prohibit it</u>, just as it did in the financial context via passage of the Money Laundering Control Act of 1986. Yet when Congress enacted the GCA and its many subsequent amendments, no anti-structuring prohibitions or language were ever included. *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213; 18 U.S.C. § 922. Since Congress did not do so, ATF lacks the authority to unprecedentedly transplant financial crime analogues into the GCA.

In Footnote 138 of Final Rule 2021R-05F, ATF cites *United States* v. *Evans,* 928 F.2d 858 (9th Cir. 1991) to support its contention that the sale of firearm parts cannot be "structured" to avoid the appearance of commercially manufacturing or distributing firearms. 87 *Fed. Reg.* 24713. Of course, *Evans* charged a *conspiracy* (an entirely different crime than structuring) to transfer illegal machineguns (which "private persons could not legally possess at all"), and without payment of the NFA's $200 tax on such weapons. *Id*. at 859. And whereas structuring can be committed by *one party* (such as a depositor who structures his deposits to avoid reporting requirements), conspiracy requires *two parties* – such as, like in *Evans*, two sellers of machinegun parts that each transfer different components of a whole which is illegal. In stark contrast to such illegal activities, here Plaintiff's customers purchase *unregulated* items that are *legal* to purchase, in order to privately manufacture something that is *lawful* to make. Not to mention, conspiracy requires an *agreement* which is conspicuously absent here.

At bottom, the ATF C&D Order's allegations of structuring should be viewed as an effort to chill and in fact eliminate the market for 80% frames and receivers, because retailers of unregulated parts will not be able to comply with such vague and ambiguous standards of what they can and cannot sell (since it is the customer who decides what he wants to purchase).

What is more, even if multiple transactions of unregulated firearm parts could be construed to be "structuring," and a prohibition against such activity could be divined within the statutes that the ATF administers, JSD Supply is the *wrong party* to threaten or penalize for alleged structuring activities. If the ATF seeks to draw inspiration from the anti-structuring provisions of 31 U.S.C. § 5324, an analogous application of the anti-structuring offense would be against the *purchasers* of the unregulated firearm parts who decide how to structure their purchase, and not against the

On the other side of the balance, any interests invoked by Defendants are entirely speculative, notwithstanding the mantra of "public safety," as invoked in the ATF's C&D Order. *See* Exhibit 1 at 2. Indeed, if public safety were threatened as ATF's C&D Order claimed, then the agency would not have waited three days to hand-deliver its order to Plaintiff, and instead would have served it immediately.

More fundamentally, however, absolutely no harm will befall the government by issuance of injunctive relief because, as noted, ATF's C&D Order to Plaintiff represents a thinly veiled attempt to implement prematurely the agency's Final Rule, which is not scheduled to go into effect until August 24, 2022. If that rulemaking was any sort of an emergency, ATF would not have provided a lengthy 120-day implementation period – after waiting almost one year to issue the Final Rule after the agency's Notice of Proposed Rulemaking. *See* 86 FR 27720, Notice of Proposed Rulemaking for Definition of "Frame or Receiver" and Identification of Firearms, published on May 21, 2021.

It cannot possibly be the case that Plaintiff's business somehow poses some unique risk that is not posed by the hundreds (if not thousands) of other companies throughout the internet and across the country that are engaged in *identical* business activities, selling *identical* products, in *identical* ways. Indeed, any customer who could have and would have purchased products from Plaintiff can still purchase (and quite certainly is purchasing) those products elsewhere. The government can offer absolutely no justification as to why Plaintiff's business must shut its doors

---

*retailer* who merely fulfills its customers' orders. This distinction tracks the well-established anti-structuring enforcement scheme against *individuals* who attempt to structure monetary transactions, and not against the *banks* where, for example, structured deposits are made. *See, e.g., United States v. Retos*, 25 F.3d 1220 (3d Cir. 1994); *United States v. Cocivera*, 104 F.3d 566 (3d Cir. 1996); *United States v. Nolan-Cooper*, 155 F.3d 221 (3d Cir. 1998); *United States v. Kadonsky*, 242 F.3d 516 (3d Cir. 2001); *United States v. Sczubelek*, 402 F.3d 175 (3d Cir. 2005).

now, while the rest of the industry can operate for an additional three months until August 24, 2022. Further, in this regard, issuing injunctive relief would clearly return the parties to *the status quo* as it existed before the C&D Order was issued.

## V.     An Injunction Is in the Public Interest.

For similar reasons, an injunction is also in the public interest. The Third Circuit has acknowledged that enforcement of an unconstitutional governmental policy is *always* contrary to the public interest. *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013) ("[T]he enforcement of an unconstitutional law vindicates no public interest."). Enforcement of the unlawful (and unconstitutional) ATF C&D Order issued to Plaintiff, which stands in direct conflict with the statutory text and infringes constitutional rights in the process, is by definition contrary to the public interest.  The entry of a temporary restraining order and preliminary injunction serves the public interest as a matter of law, and neither Defendants nor the public will be prejudiced by an entry of an Order enjoining the government from acting unlawfully.

## CONCLUSION

The inability of the Biden Administration to persuade Congress to enact legislation to ban always lawful homemade firearms, which anti-gun activists now pejoratively call "ghost guns," does not somehow empower ATF to unilaterally and without statutory authority to implement that failed legislative agenda.[5]

For the reasons stated, this Court should grant Plaintiff's Motion for a Temporary

---

[5]   *See* B. Samuels, "Democrats urge Biden to take executive action on ghost guns," *The Hill* (March 9, 2021) ("Sen. Robert Menendez (D-N.J.), asked Biden in a letter obtained by The Hill to consider executive action while Congress works on legislation to ban ghost guns…. Legislation to … tighten access to firearms has repeatedly fallen flat in Congress….").
https://thehill.com/homenews/senate/542356-democratic-senators-urge-biden-to-take-executive-action-on-ghost-guns/

Restraining Order and/or Preliminary Injunction, enjoining Defendants from in any way enforcing ATF's C&D Order against Plaintiff.

Dated:  May 20, 2022	Respectfully submitted,

By:   s/ David J. Berardinelli
David J. Berardinelli (Pa. ID No. 79402)
DEFOREST KOSCELNIK & BERARDINELLI
436 Seventh Ave., 30th Fl.
Pittsburgh, PA  15219
T:	412-227-3100
F:	 412-227-3130
Email:  berardinelli@deforestlawfirm.com

Robert J. Olson*
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T:	703-356-5070
T:	540-450-8777
F:	703-356-5085
Email: wjo@mindspring.com
*Admission pro hac vice pending

Stephen D. Stambouliehh* (MS ID No. 102784)
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS  38654
T:	601-852-3440
Email: stephen@sdslaw.us
*Admission pro hac vice pending

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOT AN LLC d/b/a/ JSD SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; and GARY M. RESTAINO AS THE ACTING DIRECTOR OF ATF,<br><br>Defendants. | Case No. 2:22-cv-00747-WSS |

**CERTIFICATE OF SERVICE**

    I declare under penalty of perjury that a copy of Plaintiff Not An LLC d/b/a JSD Supply's Memorandum in Support of Emergency Motion For Temporary Restraining Order and/or Preliminary Injunction was served today via First Class Mail postage prepaid and electronic mail to:

Daniel Riess (TX Bar #24037359)
Trial Attorney
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, D.C. 200005
Phone: 202-353-3098
Fax: 202-616-8460
Email: Daniel.Riess@usdoj.gov

Matthew P. Varisco
Special Agent in Charge
Philadelphia Field Division, ATF
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106
Phone: 215-446-7800
Email: PhilDiv@atf.gov

Date: May 20, 2022　　　　　　　　　　　　　　s/ David J. Berardinelli
　　　　　　　　　　　　　　　　　　　　　　　　David J. Berardinelli