**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NOT AN LLC d/b/a JSD SUPPLY,** | ) | |
| | ) | **Case No. 2:22-cv-00747-WSS** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BUREAU OF ALCOHOL, TOBACCO,** | ) | |
| **FIREARMS AND EXPLOSIVES** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**INTRODUCTION**

Plaintiff, an unlicensed seller of weapons parts kits and other firearms-related products, filed this complaint and moved for a temporary restraining order and preliminary injunction to enjoin a Cease and Desist Letter issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). However, ATF has since rescinded that letter, rendering Plaintiff's request for injunctive relief moot, and Plaintiff presents no plausible basis for emergency injunctive relief. As a threshold matter, Plaintiff cannot show any imminent irreparable harm that would justify a preliminary injunction, let alone one enjoining a hypothetical future ATF enforcement action. To the extent that Plaintiff might be challenging ATF's preexisting policy of treating certain weapons kits as firearms that only a licensed dealer may sell, Plaintiff fails to show it is likely to succeed because it is not challenging final agency action and its claim is unripe. And if Plaintiff seeks to enjoin a regulation that has not been applied to it, and that has not yet gone into effect, such a claim would be unripe and would seek an impermissible advisory opinion. The Court should therefore deny Plaintiff's motion.

**RELEVANT BACKGROUND**

## I.     Legal Background

In enacting the Gun Control Act of 1968, 18 U.S.C. 921 *et seq*. (GCA or Act), Congress established a framework of federal laws governing the possession and sale of firearms. Among the GCA's provisions is a mandate that "[n]o person shall engage in the business of . . . dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a); *see also id*. § 922(a)(1)(A) (prohibiting sale of unlicensed firearms) Once a person has applied for, and received, a Federal Firearms License (FFL), they are legally permitted to sell firearms (including over the Internet), subject to certain regulations, including

1

ensuring that all firearms sold have a serial number that would assist law enforcement in tracing firearms used in criminal activity. The Act's definition of "firearm" includes "any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive." *Id.* § 921(a)(3)(A). Courts have recognized that unassembled weapons parts kits can constitute "firearms" under this definition.[1]

The Attorney General has delegated to ATF the authority to "administer, and enforce the laws related to . . . firearms . . . , and perform other duties as assigned by the Attorney General, including exercising the functions and powers of the Attorney General under" the GCA. 28 C.F.R. § 0.130. Exercising this delegated authority, ATF has provided both formal guidance (regulations) and informal guidance (classification determinations) as to what constitutes "firearms." Although a manufacturer or dealer is not legally required to seek an agency determination whether its product constitutes a "firearm" prior to the product's manufacture or sale, ATF provides such determinations to manufacturers or dealers who submit requests for classification. *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) (citing ATF, *Nat'l Firearms Act Handbook*

---

[1] *See United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017) (upholding denial of motion to acquit on conviction of manufacturing and selling unlicensed firearms where the evidence demonstrated that defendant "was selling complete Uzi parts kits that could 'readily be converted to expel a projectile by the action of an explosive,' thus meeting [18 U.S.C. § 921(a)(3)(A)'s] definition of a firearm"); *United States v. Stewart*, 451 F.3d 1071, 1073 (9th Cir. 2006) (upholding denial of motion for evidentiary hearing on motion to suppress because ATF agent's affidavit "support[ed] a finding of probable cause" that defendants' rifle parts kits "could 'readily be converted,' as defined in 18 U.S.C. § 921(a)(3)(A)"), *overruled in part on other grounds, United States v. Henry*, 688 F.3d 637, 642 (9th Cir. 2012); *see also United States v. Theodoropoulos*, 866 F.2d 587, 595 n.3 (3d Cir. 1989) (conviction for using firearm during drug trafficking offense was "not precluded because the machine pistol was disassembled" because it "could have easily been made operable"' and thus fell within 18 U.S.C. § 921(a)(3)(A)'s definition), *overruled in part on other grounds by United States v. Price*, 76 F.3d 526 (3d Cir. 1996); *United States v. Morales*, 280 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2003) (partially-disassembled pistol was a "firearm" under 18 U.S.C. § 921(a)(3) because "[w]hether in pieces or whole, it is clear to this Court that the item . . . was clearly 'designed to,' and could 'readily be converted to' expel a projectile").

§ 7.2.4 (2009) ("*Handbook*")).[2]   Under this procedure, a manufacturer or seller may submit a request accompanied by a prototype of the product to ATF's Firearms Technology Branch for classification in advance of its manufacture or sale.   *See McCutchen v. United States*, 14 F.4th 1355, 1368 (Fed. Cir. 2021) (quoting *Handbook*).   The agency then issues a classification letter determining whether the product is or is not a "firearm."   *See id*.   "A classification letter sets forth 'the agency's official position concerning the status of the firearms under Federal firearms laws.'" *Sig Sauer*, 826 F.3d at 600 (quoting *Handbook*).   A letter recipient may seek reconsideration of the classification from the agency, and may also seek judicial review of the classification.   *See id*.

## II.    Factual and Procedural Background

Plaintiff Not an LLC d/b/a JSD Supply (JSD or Plaintiff) is a Pennsylvania entity and retail seller of firearm-related products.   Compl. ¶ 5, ECF No. 1.[3]   JSD is not a Federal Firearm Licensee that may legally sell firearms, and has never applied for such an FFL.   According to Plaintiff, "[s]ince 2013, [it has] helped thousands of people build their own gun from the privacy of their garage" with "[n]o serialization, no background check, no government fee."   JSD Supply, https://jsdsupply.com/about-us/.   Among other products, Plaintiff sells weapons parts kits.   *See* JSD Supply, Polymer 80 Parts and Kits, https://jsdsupply.com/brand/polymer-80/ ("The custom handgun you build from our Polymer 80 kit looks, feels and operates just like any other gun.   But they don't require a background check or a serial number, making them the best solution when privacy is the main concern.").   JSD has not submitted the products it sells to ATF's Firearms and Ammunition Technology Division for a classification decision as to whether the product is a "firearm" under the GCA.

---

[2] https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-7/download
[3] The cited allegations from the Complaint are taken as true solely for purposes of this brief.

On or about May 12, 2022, Plaintiff received a Cease and Desist Letter (C&D Letter) from ATF.  Compl., Ex. 1.  Plaintiff filed this action on May 19, 2022, and moved for a temporary restraining order and/or preliminary injunction the following day.  ECF Nos. 1-3.  On May 20, 2022, ATF rescinded the C&D Letter to Plaintiff.  *See* Letter from Mathew P. Varisco to William J. Olson (attached as Ex. 1) (Rescission Letter).

## ARGUMENT

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief."  *Doe 1 v. Upper Saint Clair Sch. Dist.*, __ F. Supp. 3d __, No. 2:22-CV-112, 2022 WL 189691, at *4 (W.D. Pa. Jan. 21, 2022) (citation omitted).  "It is the movant's burden to establish the requirements for injunctive relief, particularly the first two prongs."  *Id.* (citation omitted).

I.    **There Is No Imminent Irreparable Harm That Would Justify Emergency Injunctive Relief or Demonstrate Standing.**

To obtain a preliminary injunction, the moving party must establish that it is "is likely to suffer irreparable harm in the absence of preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The Third Circuit defines "likely" in this context as "more apt to occur than not."  *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).  Accordingly, the moving party must establish "more than a mere possibility that harm will come to pass."  *Id.* (citation omitted).  Moreover, the moving party must establish that the irreparable harm it faces is sufficiently "related" to "the gravamen of the complaint."  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 489-90 (3d Cir. 2000).

JSD does not meet its burden under this standard.  JSD's claim based upon its contention that it has been "forced to halt retail sales of *all* its products" as a result of the C&D Letter, ECF

No. 3 at 2; *see also id.* at 13-14, is now moot because that letter has been rescinded.  Moreover, any threat of enforcement against JSD is speculative, and does not satisfy the Third Circuit's "more apt to occur than not" test for irreparable harm.  *Revel*, 802 F.3d at 571; *see also id.* ("To establish irreparable harm, [the moving party] must demonstrate an injury that is neither remote nor speculative, but actual and imminent.") (citation and internal punctuation omitted).  Here, where Plaintiff asks the Court to enjoin hypothetical future law enforcement action, the theoretical consequences from such hypothetical action cannot constitute irreparable harm now.  *See Younger v. Harris*, 401 U.S. 37, 46 (1971) ("Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term.").

Moreover, JSD fails to plausibly allege—much less to establish—that its self-inflicted shutdown of its business flows as a natural consequence from the now-rescinded C&D Letter.  The GCA prohibits only the *unlicensed* sale of *firearms*.  *See* 18 U.S.C. § 923.  If JSD wishes to sell firearms that are designed to or may readily be converted to expel a projectile by the action of an explosive, it is free to do so after obtaining a Federal Firearms License—the fee for which is currently $200[4]—and complying with the GCA's serialization and recordkeeping requirements.  Alternatively, JSD may submit the products that it sells for classification to ATF, and may continue selling without a license any products that ATF does not classify as "firearms" under the GCA.  Put simply, JSD cannot establish that it is entitled to emergency relief based on irreparable harm that, even if real, does not flow from the alleged actions of ATF—namely, the issuance of the now-rescinded C&D Letter or any hypothetical future enforcement action.

---

[4] https://www.atf.gov/firearms/docs/form/form-7-7-cr-application-federal-firearms-license-atf-form-531012531016/download

For the same reasons, JSD has failed to plausibly allege any imminent risk of concrete harm that would constitute an Article III injury.  To establish Article III standing based upon a harm that has not yet occurred, the injury must be imminent.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  "Although imminent is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending."  *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 (1992)).  And a litigant "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Id*. at 402.  Here, any injury JSD may suffer in the future is speculative, and therefore JSD has also failed to plausibly allege Article III standing.

## II.   Plaintiff Has Failed to Demonstrate That It Is Likely to Succeed on the Merits.

### A.   Plaintiff's Challenge to ATF's Cease and Desist Letter Is Moot.

JSD's Complaint requests "a preliminary injunction, enjoining Defendants from enforcing against Plaintiff the demands made in ATF's May 9, 2022 C&D Order to Plaintiff, or from taking any other action against Plaintiff as a result of that letter."  Compl. at 41.  Plaintiff also requests "[a]n order permanently enjoining Defendants from enforcing against Plaintiff the claims and demands made in ATF's C&D Order of May 9, 2022."  *Id*. at 42.  Because ATF has now issued the Rescission Letter, JSD has been restored to its pre-May 9 status quo and JSD has effectively received the injunctive relief it seeks.  This action seeking to enjoin ATF from taking any action resulting from the C&D Letter is therefore moot.

"Mootness is a threshold issue that prevents a federal court from hearing a case where there is no live case or controversy as required by Article III of our Constitution."  *In re Semcrude, L.P.*, 728 F.3d 314, 317 (3d Cir. 2013).  The Supreme Court has made clear that "a federal court has no

authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal punctuation omitted). "The mootness doctrine is centrally concerned with the court's ability to grant effective relief: If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (citation omitted).

Here, there is no dispute that the C&D Letter dated May 9, 2022, Ex. 1 to Compl, has been explicitly rescinded by ATF pursuant to the Rescission Letter. Ex. 1. Therefore, JSD is now in exactly the same position it was prior to the C&D Letter being sent – there are no "claims" or "demands" in the letter to enforce, and ATF can take no action "as a result of" the letter.[5] Therefore, because the Rescission Letter "prevent[s] a court from being able to grant the requested relief, the case must be dismissed as moot." *County of Morris*, 273 F.3d at 533; *see also Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 862 n.1 (3d Cir. 2012) (holding that even if constitutional mootness does not apply, dismissing claims on grounds of prudential mootness is warranted where "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief") (internal citations and punctuation omitted).

### B.    Any Injunctive Relief Prohibiting or Interfering with ATF's Ability to Conduct Law Enforcement Investigations Would Be Improper.

To the extent Plaintiff seeks an injunction barring the government from bringing any hypothetical future enforcement action against Plaintiff for any violations of federal firearms laws,

---

[5]  Of course, the issuance of the Rescission Letter does not mean that JSD is now permitted to violate applicable statutes and regulations. As set forth in more detail *infra* Section II.B, this Court should not interfere with ATF's ability to investigate potential violations of the law.

such relief would be improper.   First, Plaintiff has not demonstrated a credible threat of enforcement sufficient to satisfy the injury-in-fact requirement of standing.   Second, because such relief would in effect require Defendants to extend a blanket criminal immunity to Plaintiff, it would be a mandatory injunction altering the status quo, and Plaintiff would bear a "particularly heavy burden, requiring [it] to show a substantial likelihood of success on the merits and that [its] right to relief is indisputably clear."   *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (citations and internal punctuation omitted).   Plaintiff does not satisfy this burden. Third, any decisions related to law enforcement investigations is committed to the discretion of the executive branch.   "The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws."   *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citation omitted); *cf. Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 187 (3d Cir. 2006) (holding that these "[s]eparation-of-power concerns thus counsel against using the extraordinary remedy of enjoining the Government from filing . . . indictments.").

## C.   To the Extent That Plaintiff Challenges ATF's Pre-Existing General Enforcement Policy, There Is No Final Agency Action.

Plaintiff's APA challenges specifically argue that the now-rescinded C&D Letter is an unlawful agency action.   However, to the extent that Plaintiff now purports to change that cause of action from what is alleged in its Complaint to challenge ATF's general enforcement policy, as referenced in the Rescission Letter, that challenge would fail for lack of final agency action.

The APA gives federal courts jurisdiction over *final* agency actions, providing that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review."   5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to [a] specific authorization in the substantive statute, but only under the general review provisions of

the APA, the 'agency action' in question must be 'final agency action.'") (quoting 5 U.S.C. § 704). "Under federal law, not all agency determinations are final actions." *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 318 (3d Cir. 2019) (citation omitted). "Generally, 'two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *New Jersey v. Nuclear Regul. Comm'n*, 526 F.3d 98, 102 (3d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Any such APA challenge to ATF's general enforcement policy would fail on both prongs. First, the Rescission Letter merely summarizes ATF's pre-existing interpretation of the GCA, and does not reflect any new or changed decision by the agency. *See, e.g.*, *Montana Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *6 (D. Mont. Aug. 31, 2010) (rejecting challenge to ATF letter summarizing ATF's legal interpretation because "[w]ith respect to the first [*Bennett*] requirement, there is nothing to suggest that the letter marks the consummation of the ATF's decisionmaking process;" rather, "[t]he letter simply restates the requirements of federal firearms laws."), *adopted*, No. CV 09-147-M-DWM-JCL, 2010 WL 3909431 (D. Mont. Sept. 29, 2010), *aff'd on other grounds*, 727 F.3d 975 (9th Cir. 2013). Courts have consistently held that an agency re-stating its existing policy or interpretation of law is not a final agency action under the APA. *See Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (holding that a reference guide published by ATF was not final agency action because it did "not itself *determine* the law or the consequences of not following it" but only "*inform*[ed] a licensee[] of what the law, previously enacted or adopted, is") (emphasis in original); *see also Menominee Indian Tribe of Wisconsin v. EPA*, 947 F.3d 1065, 1070 (7th Cir. 2020)

9

("Because [ATF's] letter[] only reiterated the status quo, there [is] nothing for the district court . . . to review."); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (no final agency action based on a statement made by an agency in a letter to plaintiff because "[b]y *restating* [the agency's] established interpretation of" the law, the letter "tread no new ground.  It left the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy.") (emphasis in original).

Neither the C&D Letter nor the Rescission Letter broke new ground in setting forth ATF's "position that firearm kits that are designed to or may readily be converted to, expel a projectile by the action of an explosive are firearms as defined by the Gun Control Act, 18 U.S.C. § 921(a)(3)(A)."  *See* Ex. 1.  Indeed, many federal courts have recognized and adopted this unremarkable principle, as reflected in decisions such as *Wick* and *Stewart*.  *See supra* n.1.  JSD itself was aware of this position.  In its Complaint, JSD cited to a search warrant issued on December 9, 2020 against Polymer80, Inc., specifying that ATF had determined that two specific weapons kits sold by Polymer80 met the GCA's definition of a firearm.  *See* Application for Search Warrant ¶¶ 36-48, *In re Polymer80, Inc.*, no. 3:20-mj-123-WGC (D. Nev. Dec. 9, 2020).[6] ECF No. 1 at 10 n.5.  So JSD cannot plausibly claim that the rescission letter constitutes a new agency position on a point of legal interpretation when it had actual notice prior to receiving the Rescission Letter that ATF had previously taken that same legal interpretation.

On the second prong, nothing in ATF's Rescission Letter could reasonably be read to determine rights or obligations, and no "legal consequences" flow from the letter.  Courts have held that documents from government agencies communicating general pre-existing legal positions and interpretations are not final agency action because any potential legal consequences

---

[6] https://www.documentcloud.org/documents/21112212-ghostraid-121420-warrant

derive from the laws and regulations themselves, not the communication. *See Golden*, 599 F.3d at 433 ("Indeed, if the ATF had never" sent plaintiff this letter, "the ATF would still have had the authority to prosecute licensees for engaging in the conduct described [in the letter] because legal consequences do not emanate from [the letter] but from the Gun Control Act and its implementing regulations."); *Montana Shooting Sports*, 2010 WL 3926029, at *6 (holding that challenge to ATF letter failed to meet the second *Bennett* prong because "any legal consequences in this case emanate not from the ATF's letter, but from applicable federal firearms laws and their implementing regulations.").

Here, nothing in the Rescission Letter imposes new legal obligations on, or results in any specific legal consequences for, JSD. The letter neither purports to take a position as to whether any specific product or products sold by JSD are or are not firearms under the GCA,[7] nor imposes any sanction or harm upon JSD. Rather, the letter simply contains a very brief summation of ATF's pre-existing interpretation of the GCA, and cites a pre-existing court filing reflecting that interpretation. The potential consequence JSD identifies in its complaint – a risk of future criminal prosecution – is speculative because it is contingent upon any number of future events; moreover, even if it were to occur, it would be the consequence of the statute itself, not the Rescission Letter. That letter thus does not constitute final agency action.

---

[7] Moreover, ATF's letter notified Plaintiff that "[a]ny questions about whether any particular product or products would be considered a 'firearm' for purposes of the GCA and its implementing regulations may be submitted to ATF for classification." Having thus "advised [Plaintiff] of [the] administrative review rights" available to it," "it is difficult to define [ATF's letter] as final, rather than initial, agency action." *Fanning v. United States*, 346 F.3d 386, 401 (3d Cir. 2003).

**D.      To the Extent Plaintiff Might Challenge ATF's Enforcement Policy, Such a Claim Is Not Ripe.**

To the extent Plaintiff might be challenging not only the rescinded C&D Letter, but also ATF's pre-existing interpretation of the GCA and its enforcement policy, this Court would lack subject matter jurisdiction over such a challenge because it is not ripe.  Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted).  "At its core, ripeness works to determine whether a party has brought an action prematurely and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citation and internal punctuation omitted).

The Supreme Court in *Abbott Laboratories* "laid out two principal considerations for gauging ripeness including (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'"  *Plains*, 866 F.3d at 539 (quoting *Abbott Labs.*, 387 U.S. at 149).  In analyzing cases in which a plaintiff seeks a declaratory judgment, courts in this Circuit "apply a somewhat refined test for ripeness," *Plains*, 866 F.3d at 859 (citation and internal punctuation omitted), that the Third Circuit formulated in *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990).  Under this *Step-Saver* test, courts examine "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment."  *Plains*, 866 F.3d at 540 (citation omitted).

Here, JSD's claims are not ripe.  The now-rescinded C&D Letter is not causing JSD any injury, let alone any imminent irreparable injury; therefore, there is no sufficiently concrete case or controversy under Article III.  Because JSD does not identify any actual dispute, there is no concrete set of facts to which this Court could anchor its legal analysis.  Without being presented with a concrete set of facts regarding, among other things, (a) which specific product(s) ATF has determined to be a "firearm" within the meaning of the GCA; (b) the rationale for that determination; and (c) what action the ATF has taken or threatens to take in response to that determination, the Court is not in a position to evaluate what, if any, actions by ATF should be enjoined.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").  Here, JSD has alleged no more than an abstract disagreement with ATF's interpretation of the GCA and its enforcement practices, and has identified no specific ATF classification determination or enforcement action that would allow the Court to evaluate JSD's claims in the context of specific facts.

JSD has also failed to satisfy any of the three requirements for showing that a request for declaratory judgment is ripe under the Third Circuit's *Step-Saver* decision.  Regarding the first prong, "[w]here the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III."  *Armstrong*, 961 F.2d at 411-12 (citation omitted); *see also PSA, LLC v. Gonzales*, 461 F. Supp. 2d 351, 356 (E.D. Pa. 2006) ("The surest sign that a case lacks sufficient adversity to be ripe for decision is when the dispute between the parties is contingent on some future event.").  Here, any dispute between the parties would necessarily be contingent upon uncertain future events, so there is no current adversity between the parties.

13

JSD similarly fails to show that it could satisfy the second *Step-Saver* requirement because "[t]he presence of a purely legal question is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." *Armstrong*, 961 F.2d at 421 (citation and internal punctuation omitted). Unless the Court can determine that its decision would have a concrete impact on a live dispute between the parties, it would be issuing an advisory opinion. And here, because "the occurrence" of the event that could give rise to future injury "is still based on contingencies, [Plaintiff] has not alleged a sufficiently imminent injury that would give rise to a justiciable case under Article III of the Constitution." *Plains*, 866 F.3d at 544. Here, JSD requests that this Court issue a broad advisory opinion governing unspecified future ATF actions regarding unspecified products, which is not adequate to meet the second *Step-Saver* requirement.

Finally, JSD fails to show it could satisfy the third and final *Step-Saver* requirement, that the declaratory judgment requested have utility to the parties. "Practical utility goes to whether the parties' plans of actions are likely to be affected by a declaratory judgment and considers the hardship to the parties of withholding judgment." *Plains*, 866 F.3d at 544 (citation omitted). Here, JSD will suffer no hardship if this Court does not immediately review its case and instead waits to see if there are further factual developments that would give provide a concrete context in which to consider a legal challenge. *See Nextel*, 305 F.3d at 194 ("As to the hardship to the parties of withholding court consideration, we have stated that in order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both *immediate* and *significant*.") (citation and internal punctuation omitted) (emphasis added).

The injunctive relief sought by JSD in its Complaint, ECF No. 1 at 41-42, is all targeted towards the already-vacated C&D Letter. Having effectively received the relief it seeks in its Complaint, JSD now pivots towards asking this Court to issue a broad advisory opinion dictating

ATF's investigative practices and priorities.  However, there are no concrete facts before the Court to allow it to determine the substantive legal issues, and this issue is therefore not ripe for this Court's consideration.[8]

**E.      Any Challenge by JSD to the Final Rule Should Be Rejected.**

JSD asks this Court to enjoin Defendants from enforcing the Final Rule (2021R-05F) in advance of its August 24, 2022 effective date.  ECF No. 1 at 42.  However, because ATF has not and is not enforcing the provisions of the Final Rule before the date on which the Rule becomes effective, such an injunction would be pointless.  Furthermore, JSD's request asks this Court to issue a premature ruling based on an unripe facial challenge, such a request was not included in JSD's Complaint, is not properly before the Court, and should be rejected.

**1.      Enjoining Defendants From Enforcing the Provisions of a Rule Not Currently in Effect Would Have No Effect.**

There is no dispute that the Final Rule referenced by JSD (2021R-05F)[9] does not become effective until August 24, 2022.  JSD presents no basis for its claim that ATF is "quite obviously" enforcing the Final Rule, ECF No 3 at 6, because the C&D Letter specifically noted that it was being sent "notwithstanding the recently announced regulations and definitions under Final Rule 2021R-05F," Ex. 1 to Compl., and as explained above, ATF had already recognized that weapons parts kits may be "firearms" under the GCA.  Here, the Final Rule is not yet in effect, and ATF is

---

[8]  This is particularly true of JSD's constitutional claims, because "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."  *Lyng v. NW Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). This principle further underscores the need to subject Plaintiff's claim to a rigorous ripeness analysis.

[9]  The Final Rule was published in the Federal Register on April 26, 2022, and the full text is available at: https://www.federalregister.gov/documents/2022/04/26/2022-08026/definition-of-frame-or-receiver-and-identification-of-firearms

not enforcing its provisions until it goes into effect.  Providing JSD the injunctive relief it seeks would therefore not provide it with any tangible relief and would therefore be inappropriate.

2. **Any Challenge by JSD to the Substantive Provisions of the Final Rule Is an Unripe Facial Challenge.**

Nowhere in JSD's Complaint does it raise or seek any general prospective relief from the Final Rule once it becomes effective on August 24, 2022.  *See* ECF No. 1 at 42 ¶ d (seeking only injunctive relief against Defendants "from enforcing the Final Rule (2021R-05F) ahead of its date of implementation").  For that reason alone, the Court should not grant any injunctive relief against Defendants' implementation of the Final Rule once it becomes effective.

However, for the first time in its Brief in Support of its Motion for Emergency Injunctive Relief, ECF No. 3 at 3-10, Plaintiff seems to possibly be arguing that the Final Rule itself is unlawful and should be struck down.  It is not appropriate for JSD to seek such sweeping relief without mentioning it in its Complaint, *see infra* n.10, and in any event, the Court should not consider or rule upon the issue of whether ATF may apply or enforce the Final Rule after August 24, 2022 because that would be a broad advisory opinion regarding an unripe facial challenge. Indeed, JSD only addresses the Rule in broad generalities, and provides no specific application of that Rule it seeks to challenge such that the Court would have the benefit of adjudicating any challenge in the context of a concrete application.

To the extent JSD is challenging ATF's enforcement of the rule after August 24, 2022, such a claim would fall well short of meeting the two *Abbott Laboratories* factors.  First, this issue is not fit for judicial decision.  As the Supreme Court has cautioned, a legal challenge to a rule or regulation is ordinarily not ripe for judicial decision "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to

16

harm him." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808.  Here, JSD has not identified any specific

application of the Rule that would cause it actual hardship and justify any injunctive relief now.

*See Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013)

("Generally, a mere possibility of future injury, unless it is the cause of some present detriment,

does not constitute hardship.").  Accordingly, because Plaintiff has failed to show that it would

suffer imminent harm in the absence of a decision regarding the Final Rule, any purported

challenge to that Rule's substance is unripe and should not be considered by the Court.[10]

F.     **JSD Has Failed to Show a Likelihood of Success on the Merits on Its Constitutional Claims.**

While the threshold issues discussed above provide more than sufficient basis to deny

JSD's motion, JSD also fails to show it is likely to succeed on either of its constitutional claims.

First, Plaintiff fails to show that it is likely to succeed on its claim that the Second

Amendment prohibits ATF from preventing the sale of firearms—including weapons parts kits

that constitute "firearms" under the GCA—without a valid license.  *See* ECF No. 3 at 10-11;

Compl. ¶¶ 231-41.  The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008),

clarified that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions

on . . . laws imposing conditions and qualifications on the commercial sale of arms," characterizing

such laws as "presumptively lawful regulatory measures."  *Id*. at 626-67 & n.26.  Courts have

repeatedly rejected Second Amendment challenges to the federal prohibition on the sale of

---

[10]  Nowhere in Plaintiff's Complaint, ECF No. 1, or Motion for Emergency Injunctive Relief, ECF No. 2, does JSD request that this Court enjoin ATF from regulating gun kits under the GCA or enjoin ATF from implementing the Rule after the effective date.  Therefore, that argument is not properly before the Court.  *See McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 836 (W.D. Pa. 2010) ("The Court need not consider the arguments advanced in that portion of the Plaintiff['s] brief, since the presentation of a new argument in a brief does not constitute an amendment to the complaint.").

unlicensed firearms.  *See, e.g.*, *United States v. Focia*, 869 F.3d 1269, 1283-84 (11th Cir. 2017); *United States v. Hosford*, 843 F.3d 161, 164-70 (4th Cir. 2016).  Moreover, the Third Circuit has "generally given broad construction to *Heller*'s recognition of 'longstanding" and 'presumptively valid regulatory measures' in the context of licensing requirements."  *Lara v. Evanchick*, 534 F. Supp. 3d 478, 489 (W.D. Pa. 2021), and "it is not a far stretch of the Third Circuit's position on licensure requirements to predict that it will give wide latitude to the . . . licensing restrictions at issue here."  *Id.* at 490; *see also United States v. Marzzarella*, 595 F. Supp. 2d 596, 602 (W.D. Pa. 2009) (rejecting challenge to prohibition on possessing firearms with obliterated serial numbers, and noting that "[b]y channeling the sales of firearms through federally licensed dealers, the [GCA] sought to insure that, in the course of sales or other dispositions by these dealers, weapons could not be obtained by individuals whose possession of them would be contrary to the public interest."), *aff'd*, 614 F.3d 85 (3d Cir. 2010).

Plaintiff has similarly failed to state a plausible claim on its cause of action alleging that ATF deprived it of some property right without due process.  Compl. ¶¶ 242-253.  First and foremost, the C&D Letter has been formally rescinded, so to the extent it had any concrete impact on any property interest of JSD's, it could no longer have any such impact.  JSD's due process claim fails for that reason alone.  Furthermore, JSD was not deprived of any property interest by any action of ATF.  JSD overstates the impact of the C&D Letter, repeatedly characterizing it without any explanation as an "Order," *see, e.g.*, Compl. ¶ 1, but the C&D Letter had no independent legal consequences, and did not deprive JSD of its ability to conduct its business.  To the extent JSD's due process claim is based on confusion regarding how some of the products it offers for sale are characterized, it may submit an official classification request to ATF along with a prototype and get a definitive classification decision from ATF.  Finally, as explained in more

detail above, *see supra* Section I, even if ATF were to make a determination that some product or products sold by JSD are "firearms" under the GCA, JSD would be free to continue selling those products upon obtaining a FFL and complying with the applicable requirements for such products. Accordingly, because the only ATF action JSD identifies in its due process cause of action has been rescinded, and it was never deprived of any property interest by any action of ATF, it has failed to show any likelihood of success on the merits of its due process claim.

### III.    The Balance of the Equities Favors Defendants.

The balance of hardships and the public interest weigh against issuing an injunction here. Where the government is a party, these two inquiries merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As explained above, there is no risk of irreparable harm to Plaintiff because the C&D Letter has been rescinded, and because in any event, Plaintiff has the available options of seeking classification decisions from ATF regarding its products or obtaining a firearms license.  On the other side of the ledger, there is inherent harm to a law enforcement agency that is prevented from enforcing federal firearms laws, permitting unserialized firearms to be repeatedly sold.  The balance of the equities therefore weighs in favor of Defendants.

**CONCLUSION**

For the reasons stated above, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated: May 24, 2022                          Respectfully submitted,


                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             LESLEY FARBY
                                             Assistant Branch Director

19

*/s/ Daniel Riess*
MARTIN TOMLINSON
DANIEL RIESS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-3098
Fax: (202) 616 8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*