UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOT AN LLC d/b/a/ JSD SUPPLY, | ) | |
| | ) | Case No. 2:22-cv-00747-WSS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES; UNITED | ) | |
| STATES DEPARTMENT OF JUSTICE; and | ) | |
| GARY M. RESTAINO AS THE ACTING | ) | |
| DIRECTOR OF ATF, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On Friday, May 20, 2022, three hours after this Court issued its Order setting a briefing schedule and a hearing on Plaintiff's motion (ECF #9), ATF seems to have experienced a crisis of confidence. The agency emailed a letter to Plaintiff's counsel in an apparent effort to moot the case and thereby prevent a ruling from this Court. Exhibit 1. Without any explanation, the first sentence of that letter states that "[t]he cease-and-desist letter dated May 9, 2022, and issued to your client, JSD Supply, is hereby rescinded." *Id.* However, the second paragraph of ATF's letter undercuts that claimed withdrawal, reasserting the basis for the agency's prior letter:

> Please be aware that the [ATF's] longstanding position that firearm kits that are designed to or may readily be converted to, expel a projectile by the action of an explosive are firearms as defined by the Gun Control Act, 18 U.S.C. § 921(a)(3)(A), remains in effect. *See In the Matter of the Search of Polymer 80, Inc.*, 3:20-mj-123 WGL (D. Nev. Dec. 9, 2020). Any questions about whether any particular product or products would be considered a "firearm" for purposes of the GCA and its implementing regulations may be submitted to ATF for classification.[1]

In other words, what the agency seemingly gives in its one-sentence recission, it takes back in the next paragraph, reasserting the legal position underscoring its C&D Order, and thereby implicitly (if not explicitly) threatening Plaintiff's continued operations on same basis as before. Falling far short of walking back the agency's flawed legal positions announced in the C&D Order,

---

[1] The suggestion that Plaintiff submit "any particular product or products" to ATF for classification is disingenuous. First, at the Orchid Advisors "Firearms Industry Conference" held in Atlanta in April of 2022, ATF Associate Chief Counsel James P. Vann reported that *ATF is not issuing any classification letters* with respect to what constitutes a "firearm," until the Final Rule (2021R-05F) goes into effect. Second, ATF's Final Rule proposes to codify into regulation the agency's existing classification system, wherein "[t]he Director **_may_** issue a determination," but need not in fact do so. 87 FR at 24748 (emphasis added). Third, ATF's 2021 average processing time for requests was upwards of nine months – long after the Final Rule would go into effect. *See* Exhibit 2. Fourth, for Plaintiff's previously submitted requests, the agency's response time has been *years* – not weeks or months. Fifth, for other products Plaintiff submitted to ATF for classification, the agency *never* responded. *See* Exhibit 3 (JSD Supply product submission, dated August 16, 2019, ATF control No. 311-764). Sixth, there should be absolutely no need for Plaintiff to submit *unregulated* firearm parts to the ATF in order to receive confirmation, through a process reminiscent of Rube Goldberg, that Plaintiff may sell them.

ATF's Friday letter *reiterates that the agency continues to hold to those positions*,[2] and reserves its flexibility to enforce that (ever-changing) position against Plaintiff. That is not a rescission of the agency threat on which Plaintiff could reasonably rely to reopen its doors.

What is more, after filing of this matter, it was learned that ATF had served *another* cease-and-desist order on *another* retailer of unregulated gun parts and 80% frames and receivers in Missouri. *See* Exhibit 4. ATF's letter to KM Tactical advances *identical* positions, using *identical* language, and makes *identical* threats as ATF's purportedly-rescinded C&D Order to Plaintiff.[3] Thus, ATF continues to press its new (and flawed) policy on 80% frames and receivers and firearm parts.[4] Defendants cannot credibly claim that the threat to Plaintiff is over, when every indication is that ATF is moving ahead with the premature enforcement of its new policy. Thus, Plaintiff's business operations remain shut down, and Plaintiff continues to suffer serious irreparable harm.

Having now been aggressively challenged by Plaintiff in this Court as to the reasonableness and legality of its C&D Order, ATF seeks to evade judicial review while preserving its enforcement options. In other words, ATF now seeks to place its secret policy back into its "desk drawer … immune from any evaluation by the judiciary," and quietly sweep the whole matter

---

[2] *See* Defendants' Opposition Brief, ECF #17 at 1 (accusing Plaintiff of being "an unlicensed seller of weapons parts kits and other firearms-related products") and at 5 (suggesting Plaintiff "obtain[] a Federal Firearms License" and "submit the products that it sells for classification").

[3] First, the KM Tactical letter states that "ATF is aware that KM Tactical is selling and transferring all the components necessary to produce a fully functional firearm to a single customer in one or multiple transactions." *Compare id*. at 1 with Compl. Exhibit 1 at 1. Second, the letter states that "selling the necessary components to produce a functional firearm to the same person through multiple purchases or structured transactions at different times, instead of through a complete kit, is equivalent to selling the complete kit to the customer." *Compare id*. at 2 with Compl. Exhibit 1 at 1. Third, the letter orders KM Tactical to "[c]ease and desist all sales, structured or otherwise, of all the necessary components to produce a functional firearm to a single customer." *Compare id*. at 2 with Compl. Exhibit 1 at 2.

[4] Indeed, even if no C&D Order had ever been issued to Plaintiff, ATF's cease and desist order to KM Tactical *by itself* supports the reasonableness of Plaintiff's fear of aggressive ATF enforcement actions against Plaintiff.

2

under the rug.  *See United States v. Pulungan*, 569 F.3d 326, 328 (7th Cir. 2009).  But even if ATF had not repeated its threat against Plaintiff in the second paragraph of its letter, this matter would not be mooted, because the agency could simply resume enforcement against Plaintiff at any time.

Agencies must not be allowed to threaten enforcement action, only to strategically withdraw that threat when fearing judicial review.  As the Third Circuit explains, "we are reluctant to declare a case moot … because of some action [a defendant] took unilaterally after the litigation began.  This situation is often called '[v]oluntary cessation,' and it 'will moot a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."'" *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (noting a defendant has a "heavy burden of persua[ding] a court that a case is moot").  The focus "is on whether the defendant made that change unilaterally and so may 'return to [its] old ways' later on." *Id.* at 307.  Here, rather than it being "absolutely clear" that the challenged action will *not* reoccur, every indication is that ATF intends to continue pursuing its wrongful interpretation of the law.  First, ATF's Friday letter threatens Plaintiff on the same basis as the C&D Order.  Second, ATF has issued a nearly identical cease-and-desist to KM Tactical.  Third, ATF's Final Rule which takes effect in August promulgates the same policy change through the formal rulemaking process.

Indeed, it is clear that ATF's Friday letter was not issued during some moment of clarity by the agency, but rather represents a thinly veiled maneuver to avoid judicial review of the agency's dirty laundry, aired in Plaintiff's filings.  The government cannot threaten law-abiding businesses with civil or criminal enforcement, cause significant economic harm and commit constitutional violations in the process and then, like a bully who encounters unexpected opposition, sidestep the issue and move on to a weaker target less able to protect itself.

3

Just last year, the Supreme Court addressed a similar scenario in *Tandon v. Newsom*, 141

S. Ct. 1294 (2021), where "officials changed the challenged policy shortly after this application

was filed…." *Id*. at 1297.  Unpersuaded by the charade to avoid review, the Court concluded that:

> even if the government withdraws or modifies a … restriction in the course of
> litigation, that does not necessarily moot the case.  And so long as a case is not
> moot, litigants otherwise entitled to emergency injunctive relief remain entitled to
> such relief where the applicants 'remain under a constant threat' that government
> officials will use their power to reinstate the challenged restrictions. … officials
> with a track record of 'moving the goalposts' retain authority to reinstate those
> heightened restrictions at any time." [*Id.*]

In fact, ATF's position here is even less persuasive than California's.  Short of "withdrawing" its

position, the agency continues to adhere to the same flawed view of the law that gave rise to the

C&D Order, continuing to disapprove of and threaten Plaintiff's business operations on that basis

Additionally, a case is not moot if it is capable of repetition yet evading review, where

"'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or

expiration, and (2) there is a reasonable expectation that the same complaining party will be subject

to the same action again.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).  With ATF

continuing to threaten Plaintiff, and announcing that its legal position has not changed, this case

falls squarely within the doctrine.  First, within 24 hours of Plaintiff filing suit, ATF sought to

moot the case while preserving its options for future enforcement action.  There is simply no way

to ever "fully litigate[]" such a matter, when an agency bobs and weaves, minute-by-minute, to

avoid judicial review.  Second, it is evident that ATF (i) has not actually backed down as to its

position, (ii) continues to threaten Plaintiff, (iii) issued a nearly identical letter to another company,

and (iv) promulgated the Final Rule to take effect in August.  Should Plaintiff once again begin

business activities, it is evident that Plaintiff will again be subjected to the agency's new, lawless

campaign against unregulated 80% frames and receivers and firearm parts.

Alternatively, even if ATF had never issued the original C&D Order, an active controversy exists between the parties by Defendants' imposition of a wrongful and entirely novel interpretation of the law, well in advance of the Final Rule's August implementation.  In this case, Plaintiff challenged *not only* the ATF's C&D Order that was issued and then nominally rescinded, *but also* Defendants' underlying interpretation of the law. Plaintiff's Complaint seeks both declaratory and injunctive relief from that erroneous legal position.  Indeed, because Plaintiff has alleged an infringement of protected Second Amendment activity, it need not await an actual arrest in order for this court to issue relief.  As the Supreme Court has previously explained, actual enforcement is not always needed to challenge an unconstitutional action:  "a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" *Steffel v. Thompson*, 415 U.S., 452, 459 (1974).  In other words, "Damocles's sword does not have to actually fall … before the court will issue an injunction."  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

Finally, judicial review remains appropriate even assuming a specific agency action has been mooted, when a "plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy…." *City of Houston v. Department of Hous. & Urban Dev.*, 24 F.3d. 1421 (D.C. Cir. 1994). Thus, to the extent ATF seeks to avoid this Court's review of its C&D Order to Plaintiff, this Court should construe that as an invitation by the agency to examine (and strike down) the *identical* substance of the agency's Final Rule, which will cause *identical* (and indeed permanent) irreparable harm to Plaintiff's business operations (and constitutional rights) in three months' time. *See* Opposition Brief at 14, 16.

Respectfully submitted,

Dated:  May 24, 2022

By:      /s/ David J. Berardinelli
David J. Berardinelli
DEFOREST KOSCELNIK & BERARDINELLI
436 Seventh Ave., 30th Fl.
Pittsburgh, PA  15219
T:  412-227-3100
F:  412-227-3130
Email: berardinelli@deforestlawfirm.com

Robert J. Olson*
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T: (703) 356-5070
T: (540) 450-8777
F: (703) 356-5085
Email : wjo@mindspring.com
*Admitted Pro Hac Vice

Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
Email: stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice