# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOT AN LLC d/b/a JSD SUPPLY, ) | |
| ) | Case No. 2:22-cv-00747-WSS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
## PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

# INTRODUCTION

For the reasons stated in Defendants' opposition brief and during oral argument, Plaintiff has failed to demonstrate that this Court has jurisdiction to entertain Plaintiff's challenge to ATF's now-rescinded Cease and Desist Letter.[1] Because no legal consequences or change in Plaintiff's status resulted from the receipt of that Letter, it did not constitute final agency action and Plaintiff's challenge to the Letter is unripe. Plaintiff has also failed to plead an injury in fact as a result of its receipt of the C&D Letter, and in any event, the Letter's rescission mooted Plaintiff's challenge. Furthermore, to the extent that Plaintiff might now seek to enlarge the relief sought in its motion for a preliminary injunction to include either a pre-enforcement challenge to ATF's pre-existing policy of enforcing the GCA or a facial challenge to a regulation that has not yet become effective, those challenges could not be maintained. As with its claims regarding the C&D Letter, such claims by Plaintiff would not challenge final agency action, and would also lack standing and ripeness. The Court should therefore deny Plaintiff's motion for a preliminary injunction.

# ARGUMENT

## I. No Legal Consequences Resulted From ATF's May 9 Cease and Desist Letter.

As explained during oral argument, the Cease and Desist Letter issued by ATF represented a mechanism to notify Plaintiff of pre-existing legal obligations imposed under federal firearms laws. The agency has the discretion to issue such letters but is under no obligation to do so. Both generally speaking and in this particular instance, the issuance of a cease and desist letter neither initiates an enforcement action nor signals that an enforcement action is necessarily imminent, and its issuance is not a prerequisite for the initiation of any type of action. A recipient is not legally

---

[1] The abbreviations in this Supplemental Brief are the same as those in Defendants' Opposition to Plaintiff's Emergency Motion for Preliminary Injunction, ECF No. 17 ("Opp.").

1

required to take any action in response to a cease and desist letter other than the obligations it already has under the law. The C&D Letter thus had no independent legal impact; the obligation not to sell "firearms" without a license flows from the GCA itself, not from the Letter. In short, the Letter restated existing law but did not impose new legal obligations on Plaintiff.

**II.    Several Threshold Issues Bar Plaintiff's Challenge to the C&D Letter.**

This Court should dismiss Plaintiff's challenge to ATF's now-rescinded C&D Letter for several threshold reasons. Because no legal consequences or status change resulted from Plaintiff's receipt of the Letter, the Letter does not constitute final agency action. Nor has Plaintiff demonstrated either that its challenge is ripe for review or that it has standing to assert its challenge. Finally, and in any event, Plaintiff's challenge is moot.

**A.    The C&D Letter Does Not Constitute Final Agency Action.**

Because the C&D Letter is not "final agency action," *see* 5 U.S.C. § 704, the court lacks jurisdiction to review Plaintiff's APA challenge to the letter. *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011) (describing "final agency action" as "a jurisdictional issue"). Agency actions are final if (1) the action "marks the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature;" and (2) the action is one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Here, the C&D Letter is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. The Letter merely restates the legal consequences under the GCA for unlicensed sellers and manufacturers of "firearms," and thus "tread[s] no new ground." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). "It left the world just as it found it, and thus cannot be fairly described as implementing,

2

interpreting, or prescribing law or policy." *Id*. The Letter is thus analogous to the agency administrative order in *Solar Turbines v. Seif*, 879 F.2d 1073 (3d Cir. 1989), informing a company that its construction of a particular facility violated federal statutes, *see id*. at 1075-76, and that the court concluded was not final agency action. *Id*. at 1079-82. Here, "[t]he only apparent function of [the C&D Letter] is to serve as a vehicle by which [ATF] can notify a party that it believes the requirements of the [Gun Control Act] are being violated." *Id*. at 1081. And "[e]ven though the wording of the [C&D Letter] is in the imperative and directs immediate compliance . . . , , no civil or criminal liabilities accrue from the violation of the [Letter]." *Id*.; *see also Territorial Court of Virgin Islands v. EPA*, 54 F. App'x 339, 340-42 (3d Cir. 2002) (per curiam) (agency order directing compliance with federal law was not final agency action; order "has no legal effect on the [recipient] and acts only to advise the [recipient] of the [agency's] position that it is in violation of [a federal statute]" and "simply direct[s] the [recipient] to adhere to already existing obligations"); *Temple Univ. v. Rehnquist*, 46 F. App'x 124, 127 (3d Cir. 2002) (citing similar cases).

Courts have generally held that a document or communication issued by an agency and restating or summarizing its interpretation of the law, regardless of the format or medium of the document, does not constitute final agency action. *See AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.D.C. 2001) (document setting forth legal interpretation could not be final agency action because such an interpretation "has force only to the extent the agency can persuade a court to the same conclusion"); *see also Air Brake Sys. v. Mineta*, 357 F.3d 632, 638-40 (6th Cir. 2004) (even though agency counsel memorandum setting forth agency's definitive interpretation of regulation was culmination of agency's decision making process, it did not constitute "final agency action" because it imposed no consequences on plaintiff); *Luminant Generation Co. v. EPA*, 757 F.3d 439, 442 n.7 (5th Cir. 2014) ("[A]n injury typically is not caused when an agency merely expresses its

3

view of what the law requires of a party, even if that view is adverse to the party."). Like other ATF actions that courts have held did not constitute final agency action under the APA, the C&D Letter issued to Plaintiff did little more than restate ATF's interpretation of law. *See, e.g.*, *Golden & Zimmerman v. Domenech*, 599 F.3d 426, 432-33 (4th Cir. 2010) (frequently-asked-questions document that "inform[ed] the regulated community of what violates the law" did not "itself *determine* the law or the consequences of not following it," and if ATF "had never published [the document]," it "would still have the authority to prosecute licensees for engaging in the conduct" described therein because "legal consequences" arose only from the GCA and its implementing regulations) (emphasis in original); *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 3926029, at *6-7 (D. Mont. Aug. 31, 2010) (letter to firearms dealer restating obligations under federal law was not final agency action), *adopted*, 2010 WL 3909431 (D. Mont. Sept. 29, 2010). Similarly, here, because any legal consequences flow only from the GCA itself, and not the C&D Letter, the Letter is not final agency action.

**B.     Plaintiff Fails to Show Its Challenge to the C&D Letter Is Ripe.**

For similar reasons, Plaintiff has not demonstrated that its challenge to the Letter is ripe. As the Third Circuit has explained, finality of agency action and ripeness are doctrines "that the courts frequently mingle in deciding whether judicial review is appropriate." *Temple Univ.*, 46 F. App'x at 125 (citations omitted).

"[C]ourts traditionally have been reluctant to apply [injunctive and declaratory judgment remedies] to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Courts addressing ripeness "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149.

4

Plaintiff's challenge is unripe under both *Abbott Laboratories* prongs. First, with respect to fitness, relevant factors include: (1) "whether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm, the former being likely unripe and the latter likely ripe," and (2) "whether issues are purely legal (as against factual), in which case they are likely ripe, or whether further factual development would be useful, in which case they may be unripe." *Siemens USA Holdings v. Geisenberger*, 17 F.4th 393, 412 n.26 (3d Cir. 2021) (citation and internal punctuation omitted); *see also NE Hub Partners v. CNG Transmission Corp.*, 239 F.3d 333, 342 nn.8-9 (3d Cir. 2001) (discussing the relationship of these factors to the fitness inquiry). Here, the prospect of any future enforcement action against Plaintiff is uncertain and contingent on hypothetical future events; the C&D Letter neither initiated any enforcement action against Plaintiff nor committed ATF to pursue any such action. Thus, "as in most actions, the possibility that no enforcement action may be taken is real." *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003); *see also Wyatt, Virgin Islands, Inc. v. Gov't of Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) ("A dispute is not ripe . . . if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Additionally, the question whether any particular product that Plaintiff sells constitutes a "firearm" within the meaning of the GCA is unripe for review because it depends on the "specific characteristics" of those products, such that "further factual development would significantly advance [the Court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 812 (2003). Stated differently, the issues that Plaintiff asks this Court to resolve are readily distinguishable from the sorts of purely legal questions that courts have held may be fit for pre-enforcement review, such as "whether [an agency] properly promulgated [a]

regulation." *Wearly v. FTC*, 616 F.2d 662, 666 (3d Cir. 1980) (discussing *Abbott Labs.*, 387 U.S. at 148-53). The transmittal of the C&D Letter thus did not give rise to a controversy fit for review.

Second, Plaintiff has not demonstrated that any hardship would result from withholding review. Because the C&D Letter is not the source of Plaintiff's legal obligations to comply with the GCA, Plaintiff would not avoid any hardship by obtaining review of the Letter. *See Hooker Chem. Co. v. EPA*, 642 F.2d 48, 53 (3d Cir. 1981) (holding that "the hardship test [was not] met" where the plaintiff "was not required to take any action at [that] time beyond that required by [an existing regulation]"). To the extent that Plaintiff professes a lack of clarity with respect to its obligations under the GCA,[2] the Supreme Court has held that "legal uncertainties" are not cognizable hardships for purposes of the ripeness analysis. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811. Were the law otherwise, "courts would soon be overwhelmed with requests for what essentially would be advisory opinions." *Id*. Moreover, declining review will not prejudice Plaintiff's ability to raise any legal challenges to ATF's interpretation of the GCA in the context of a potential future enforcement action. *See Hooker Chem. Co.*, 642 F.2d at 53 n.3 (holding that the hardship requirement was not satisfied where the plaintiff "would be able to raise the alleged infirmity as a defense in enforcement proceedings").

---

[2] As explained previously, ATF can provide classification decisions for any dealers that are uncertain about whether a product is considered a "firearm" under the GCA. At oral argument, counsel for JSD identified a discrepancy between two statements made by the parties in their briefs. Defendants' opposition stated that "JSD has not submitted the products it sells to ATF's Firearms and Ammunition Technology Division for a classification decision as to whether the product is a 'firearm' under the GCA." Opp. at 3. Plaintiff's reply notes that it has submitted several products to ATF for classification. Reply at 1 n.1, ECF No. 19-1. As written, Defendants' statement is inadvertently incorrect, and should have instead stated that JSD has never submitted any of the *kits* it sells to ATF for classification. Defendants acknowledge that JSD has submitted for classification other products that are not the kind of weapon kits that were the subject of the C&D Letter and Rescission Letter in this case, and regret any confusion this may have caused.

### C. Plaintiff Has Not Demonstrated Standing to Sue.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Because the C&D Letter imposed no legal obligations on its own, Plaintiff fails to show it has suffered (or will imminently suffer) any cognizable injury from the Letter's issuance. Because the Letter merely restated existing obligations, JSD has failed to plausibly allege any imminent risk of concrete harm fairly traceable to the letter that would constitute an Article III injury. *See also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564, (1992) ("Past exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.") (citation omitted). And because parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416, Plaintiff may not premise injury on its voluntary decision to reduce the scope of its business operations based on the possibility of a hypothetical future enforcement action.

### D. In Any Event, Plaintiff's Challenge to ATF's Cease and Desist Letter Is Moot.

In addition to the other threshold issues that bar Plaintiff's challenge to the C&D Letter, that challenge is also moot because the Letter has been rescinded. "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003). "[I]n addition to satisfying the requirements of Article III, [courts] must answer the more policy-oriented question whether the parties before it have, at the time for decision[,] sufficient functional adversity to sharpen the issues for judicial resolution." *Id.* at 229-30.

The emergency injunctive relief sought by Plaintiff in its motion is limited to "a Temporary Restraining Order and/or Preliminary Injunction, enjoining Defendants from enforcing an ATF Cease and Desist Order issued on May 9, 2022." ECF No. 2 at 1; *cf. id.* at 3 (seeking "an Order enjoining Defendants' enforcement of their Cease and Desist Order until such time as the Court can rule on the merits"). Because Plaintiff in effect received all the emergency relief it sought when the C&D Letter was rescinded, Plaintiff's challenge to that Letter is now moot. Moreover, the voluntary-cessation exception to mootness does not apply because Plaintiff presents only a "mere speculative contingency" that ATF will engage in the same type of conduct of which Plaintiff complains, *viz.*, by issuing a new cease and desist letter. *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988). Plaintiff's challenge to the C&D Letter is thus moot.[3]

## II. To the Extent That Plaintiff Purports to Mount a Pre-Enforcement Challenge to ATF's Pre-Existing General Enforcement Policy or to the Final Rule, Such Challenges Could Not Be Maintained.

As explained above, the scope of emergency relief sought by Plaintiff is limited to the now-rescinded C&D Letter. To the extent that Plaintiff might now seek additional relief encompassing ATF's pre-existing general policy of enforcing the GCA, or ATF's not-yet effective Final Rule, such a claim—which was not properly alleged in Plaintiff's Complaint—should also be dismissed on the threshold issues of standing, ripeness, and final agency action. *See* Opp. at 7-17.

---

[3] Plaintiff also errs in contending that the "capable of repetition, yet evading review" exception to the mootness doctrine applies here. Reply at 4. "That exception is narrow and applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject *to the same action* again." *Cty. of Butler v. Gov. of Pa.*, 8 F.4th 226, 231 (3d Cir. 2021) (internal citations and punctuation omitted) (emphasis added). Plaintiff does not show that if the C&D Letter had not been rescinded, it would have been too short in duration to be fully litigated; nor does Plaintiff show "more than a theoretical possibility" of receiving another such letter. *Id.*

### A. Any Challenge to ATF's Enforcement Policy Would Be Unripe, Would Not Challenge Final Agency Action, and Would Not Allege Imminent Injury.

As explained previously, to the extent that Plaintiff now purports to change or expand the injunctive relief from the relief requested in the Complaint, to enjoining ATF's general enforcement policy as referenced in the Rescission Letter, that challenge would fail for lack of final agency action, Opp. at 8-11, and lack of ripeness. *Id*. at 11-15. Moreover, Plaintiff does not allege an imminent injury sufficient to support standing. Where a plaintiff seeks declaratory and injunctive relief for a predicted future injury that may never occur, the allegation must "demonstrate a likelihood of future harm" that is imminent and not "wholly conjectural." *McNair v. Synapse Grp.*, 672 F.3d 213, 225 (3d Cir. 2012). "[T]hreatened injury must be *certainly impending* to constitute injury in fact, and . . . [a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted) (emphasis added). And here, any challenge by Plaintiff to ATF's pre-existing policy of enforcing the GCA is wholly "conjectural" because "one cannot describe how [Plaintiff] will be injured without beginning the explanation with the word 'if.'" *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297-98 (3d Cir. 2003). Plaintiff thus lacks standing to challenge ATF's ongoing enforcement policy, and that challenge is also unripe.[4]

---

[4] Moreover, Plaintiff misplaces his reliance on *Steffel v. Thompson*, 415 U.S., 452 (1974), in this context. Reply at 5. *Steffel* "ar[o]se in the highly exceptional First Amendment context," *Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 169 (3d Cir. 2007), in which free speech claims are subject to a "relaxed standing requirement." *Id.*; *see also Pa. Fam. Inst. v. Celluci*, 489 F. Supp. 2d 460, 475 (E.D. Pa. 2007) (First Amendment claims "subject to a relaxed ripeness standard") (citation omitted). Nor does *League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), support Plaintiff's argument that its claim is ripe for review. In that case, a voting-rights organization challenging a change to voter-registration form instructions showed imminent irreparable harm sufficient to support issuance of a preliminary injunction because registration deadlines in the upcoming election would pass before the case's merits could be resolved. *See id.* at 9. By contrast, Plaintiff has identified no such pending deadline warranting the issuance of extraordinary relief. Finally, *City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994), does not support Plaintiff's

**B.     Any Challenge by JSD to an ATF Rule Would Be an Unripe Facial Challenge.**

Finally, because at no point in Plaintiff's Complaint or its Motion for Emergency Injunctive Relief does Plaintiff ask the Court to enjoin ATF from implementing its recently-promulgated rule on the date that rule becomes effective, any challenge to that rule is not properly before the Court. Opp. at 17 n.10. In any event, such a challenge would fail here because there is no concrete dispute between the parties over any provision of the new rule. As explained previously, ATF's interpretation of the GCA's definition of "firearm" as including unassembled weapons parts kits does not constitute an application of the rule but of a pre-existing interpretation recognized by courts. *Id*. at 2 & n.1. Therefore, to the extent Plaintiff challenges the rule before it has ever been applied in a concrete situation, this challenge would be a claim of facial invalidity. Such claims are "typically disfavor[ed] because they often rest on speculation, can lead courts unnecessarily to anticipate constitutional questions or formulate broad constitutional rules, and may prevent governmental officers from implementing laws in a manner consistent with the Constitution." *Owner Operator Indep. Drivers Ass'n. v. Pa. Tpk. Comm'n*, 383 F. Supp. 3d 353, 367 (M.D. Pa.), *aff'd*, 934 F.3d 283 (3d Cir. 2019) (citation omitted). In any event, Plaintiff lacks standing to assert such a challenge, which is also unripe. *See* Opp. at 15-17.

## CONCLUSION

For the reasons stated above and in Defendants' opposition brief, the Court should deny Plaintiff's motion for a preliminary injunction.

---

challenge to ATF's ongoing enforcement policy, because that case reiterated that "if a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the court unable to award relief." *Id*. at 1430; *see also id*. at 1429 (plaintiff must have "standing to bring such a forward-looking challenge and [its] request for declaratory relief [must be] ripe").

10

Dated: June 1, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Daniel Riess*
MARTIN TOMLINSON
DANIEL RIESS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-3098
Fax: (202) 616 8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*